## No. 14,026.

### R. H. McClelland et al. vs. Greenwich Insurance Company.

#### Syllabus.

1. It is not improper practice to join with the insured, as plaintiff in an action on a policy of assurance against fire, the party who is named in the policy as beneficiary thereof to the extent that his interest may appear.

2. After the Insurance Company's adjuster had visited the scene of the fire, had taken the measurements of the burned building, had suggested the employment of an architect to make estimate of the cost of replacing the structure, had possessed himself of the books and invoices of the insured, had gone over them carefully, had acquired information of all necessary facts and figures and then had made the insured an offer of a given sum in settlement of the loss, which was declined. the company is not in a position, when sued, to urge in defense that it is not shown any written notice of the fire, nor preliminary proofs of loss were delivered to it as the terms of the policy require.

3. The fact that the tax collector had recovered a judgment against the insured, which had not been paid at the date of the insurance, and which operated as a lien on the property. and the fact that the land upon which the storehouse was located was still encumbered with the vendor's privilege to secure part of the original purchase price, did not invalidate the contract

of insurance in the absence of a showing by the defense that a particular statement of interest had been required of the insured, either by the terms of the policy, or otherwise, and he had made fraudulent concealment o₁ misrepresentation of such interest.

4. The fact that the insured owed debts, which operated as a lien or mortgage on the property, did not take the property out of the category of the "unconditional and sole ownership" requirement of the policy.

5. The clause in the policy to the effect that "the entire policy, unless otherwise provided by agreement endorsed thereon or added thereto, shall be void if any change, other than by the death of the assured, take place in the interest, title or possession of the subject of insurance (except change of occupants, without increase of hazard), whether by legal process or judgment, or by voluntary act of the assured, or otherwise." was not invalidated by a mere formal seizure by the sheriff of part of the goods insured, which did not actually dispossess the insured.

A PPEAL 'from the Twenty-first Judicial District, Parish of Pointe Coupee—*Claiborne, J.*

*Yoist & Hewes,* for Plaintiffs, Appellees.

*O. B. & S. Sansum,* for Defendant, Appellant.

The opinion of the court was delivered by

BLANCHARD, J Plaintiff, R. H. McClelland, owned a store house and the ground it was situated on, and a stock of goods, wares and merchandise which had been placed in the premises. He was a country merchant .

He became indebted to S. Gumbel & Co. for advances made, and, it seems, they, for their own protection and his, took out a policy of insurance against fire, in the name of McClelland, in the sum of $2,500 as follows: $600 on the building, $200 on the furniture and fixtures, and $1700 on the stock of goods—the policy reading: "loss, if any, payable to S. Gumbel & Co. as interest may appear."

The store house and its contents were destroyed by fire and the parties failing to agree as to the amount of loss to be paid, this suit was brought by McClelland and Gumbel & Co. as joint plaintiffs.

From a judgment in their favor for $2466.93, defendant prosecutes this appeal. Of the amount awarded, it was decreed that $410.56 be paid to Gumbel & Co. as the extent of their interest in the policy; the remainder to the plaintiff McClelland.

To defendant's objection that Gumbel & Co. were improperly joined as parties plaintiff, it suffices to say that the policy itself stipu-

lates an interest in it in their favor, and to the extent of that interest it was not improper practice for them to join with McClelland as plaintiffs in the action.

The evidence discloses that defendant company sent an adjuster to the plaintiff McClelland at the scene of the fire, that he took the measurements of the burned building and at his suggestion an architect was employed to make an estimate of the cost of replacing it; also that the adjuster took the plaintiff's books relating to his mercantile business, the invoices of goods, etc., away with him, went over them carefully, and thus possessed himself of all necessary facts and figures.

Later, the parties met in New Orleans, at the office of the Insurance Agent who had issued the policy, and there the company's adjuster (the same who had been sent to the scene of the fire) offered plaintiffs $1600 in full settlement of the loss. This was refused, plaintiffs expressing their willingness to accept $1800. The adjuster declined to increase his offer to that sum.

After this, we hardly think the Company is in a position to urge in defense that it is not shown any written notice of the fire, nor preliminary proofs of loss, were delivered to it, as the terms of the policy require.

The evidence sufficiently discloses, we think, the insurable interest of the plaintiff McClelland in the property destroyed by the fire. It is made plain that he owned the store building and its contents, and sufficiently so that he owned the ground upon which the building was located.

The fact that the tax collector had recovered a judgment against McClelland on behalf of the State and the parish, aggregating $220, with penalties and cost, which had not been paid at the date of the insurance, and which operated as a lien and privilege upon all the movable, and a mortgage on all the immovable, property he owned, and the fact that the land upon part of which the storehouse was located was still incumbered with a vendor's privilege to secure part of the original purchase price thereof. did not invalidate the contract of insurance in the absence of a showing made by the defense that a particular statement of interest had been required of the insured and he had made fraudulent concealment or misrepresentation of such interest. Richards on Insurance, 2nd Ed.. Sec. 136. p. 143: Sec. 145, p. 155; Wood on Insurance, 2nd Ed., Vol. 1, Sec. 168, pp. 387-8; Am. & Eng. Ency. of Law. Vol. 7, 1st Ed., p. 1020; Ins. Co. vs. Haven, 95 U. S. 249.

With reference to this, this Court said in Adema vs. Ins. Co., 36 La. Ann. 655:—

But unless the true ownership or interest in the property is required by the conditions of the policy to be specifically and particularly and accurately set forth, it will be in general sufficient if the assured has an interest under any status of ownership or possession, in cases where no inquiries are made at the time the application is presented or the policy executed.

It does not appear that any inquiries were made at the time the application for this insurance was presented touching the status of the property as to the interest of the assured therein, or as to liens or mortgages thereon, and we do not construe the conditions of the policy as requiring ownersip or interest in the property insured to be *specifically and particularly set forth*. The fact that the insured owed debts, which operated as a lien or mortgage on the property, did not take the property out of the category of the "unconditional and sole ownership" requirement of the policy. Richards on Insurance, 2nd Ed., Sec. 143, p. 153.

The morning of the day the fire occurred a deputy sheriff of the Parish visited plaintiff's store, armed with a writ of *fieri facias* that had issued on the judgment, which the tax collector had recovered against him, and under authority of this writ announced a seizure of a show case and its contents, one lot of notions, one lot of woolen goods, another of cotton goods, one lot of ginghams, one lot of hats, one hundred and twelve pairs of shoes and eighty-four pieces of calico. The goods thus levied on, it appears, constituted but a comparatively small portion of the stock on hand. The main portion of the stock, and the building and ground upon which it is situated, he did not disturb.

The contention of the defendant is that what the deputy sheriff thus did rendered void the whole policy, and in support of this cites a clause in the policy to the effect that if any change, other than by the death of the assured, take place in the interest, title or possession of the subject of insurance (except change of occupants, without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, the entire policy is vitiated.

The contention of the plaintiffs is that to avoid a policy of insurance by reason of seizure made under execution, the seizure must be effectual, and that what the deputy sheriff did evidenced neither in fact or in law a seizure of the goods—that there was *no actual taking of poss--ession.*

The evidence discloses that the deputy sheriff did not take the goods out of the store; he left them there; he did not lock the store and take the key away with him; he did not dispossess the plaintiff McClelland of his occupancy of the store; McClelland continued to occupy it, continued his business as merchant in it, continued to sell from the stock which the deputy sheriff had not disturbed; no keeper was appointed to the goods which the sheriff announced he seized—at least it does not appear that he appointed one; his return on the writ does not so state; the officer seems to have merely set apart certain goods and informed the defendant in execution that he had seized them.

This was not an effectual seizure. There was no actual dispossession of the owner. The levy upon the goods was merely formal. McClelland's possession was not divested.

In Western Assurance Co. vs. Layer, 14 Ins. Law Journal 552, the sheriff levied on the stock of a manufacturer, and placed a bailiff in charge, who was instructed not to interfere with the business of the concern. He was required only to allow nothing to be taken away. The work of the factory, under the surveillance of the bailiff, continued in the usual manner. It was held that the possession of the sheriff was so much a qualified one as not to be a violation of the policy against "change of title or possession by legal process or judicial decree."

Ostrander on Fire Insurance, 2nd Ed., Sec. 78.

In Smith vs. F. & M. Mutual Fre Ins. Co., 8 Ins. Law Journal, 828, it was held that the condition relied on (change of title or possession by legal process) has no application in the case of a mere technical seizure. *Ib.*

So, also, in May vs. Standard Fre Ins. Co., 5 Ont. App. 605, under a clause importing, substantially, the same condition, an execution was issued against the chatels insured and the bailiff made a formal seizure, but did not interfere with the assured's custody or possession, and did not place any one in charge of the property levied upon. A bond was given soon after and the seizure released. It was held that the obligation of the Insurance Company on the policy had not been affected; that the condition of the policy referred to ' change of possession that was actual, not constructive. *Ib.*

In May on Insurance, Sec. 274. (2nd Ed.) it is said: "A seizure of the goods.insured. though taken into the actual possession of the sheriff, is not an alienation, if there is no removal." The same author, in the same section, declares that "A mere technical levy upon real estate

or personal property unaccompanied by change of possession or increase of risk, is not within the meaning of a policy which provides that insurance shall cease if the property be levied upon or taken into possession or custody."

In Hennen Bros., Lindauer & Co. vs. Katz Bros *et als.*, 41 L. R. A. 700, the identical clause, relating to change of possession through legal process, as contained in the policy in the instant case, was under consideration. There had been a seizure by the sheriff of the stock of goods insured, and the storehouse had been locked up and the sheriff had the key at the time of the fire. Nevertheless, the Supreme Court of Tennessee held the policy not invalidated by the seizure, on the ground that what the parties intended was that a change in the control and dominion over the property should not avoid the policy, unless such change rendered the risk more hazardous; that such was the meaning of those words in the clause embraced in parenthesis, to-wit: "except change of occupants, without increase of hazard." Several decisions of the New York Court of Appeals are cited as sustaining this view.

In the case at bar it is not necessary to go so far, and we are not to be understood as giving our entire adhesion to the doctrine announced in the Tennessee case. We prefer to rest our affirmance of the judgment appealed from on the mere formal character of the seizure made by the deputy sheriff, and on the decisions holding that none but actual seizure by the sheriff will so operate a change of possession as to render void the policy.

Judgment affirmed.

Rehearing refused.