19 So.2d 514

**ARCADIA BONDED WAREHOUSE CO., Inc., v. NATIONAL UNION FIRE INS. CO.**

No. 36319.

June 1, 1944.

Rehearing Denied Oct. 13, 1944.

Turner B. Morgan and Coleman & Morgan, all of Shreveport, for defendant-appellant.

J. R. Goff and Goff, Goff & Caskey, all of Arcadia, for plaintiff-appellee.

O'NIELL, Chief Justice.

This is a suit on a fire insurance policy for $5,000 covering the "Use and Occupancy" of a cotton warehouse, which was destroyed by fire during the term of the policy. The time required to rebuild the warehouse was three months. The insured claimed that the loss of the use and occupancy of the building for the three months amounted to $4,245.18. The insurance company claimed that under the co-insurance clause in the policy the proportion for which the company was liable, of the loss which the insured sustained, was only $1,250; which the company offered to pay in full settlement of its liability. The insured rejected the offer and sued for the $4,245.18, plus $359.42, being the statutory penalty of 12 per cent on the difference between the amount claimed and the amount tendered,—and plus $500 for the plaintiff's attorney's fee, under the provisions of Act No. 168 of 1908. The judge of the district court gave judgment for the plaintiff for the sum sued for, amounting to $5,104.60. The insurance company is appealing from the decision.

It is admitted that the three months which the insured took to rebuild the warehouse was the time "required with the exercise of due diligence and dispatch" —as stipulated in the policy—to rebuild the warehouse. Hence it is admitted that the question whether the amount of the company's liability is $4,245.18, as claimed by the insured—aside from the statutory penalty and attorney's fee claimed—or is only $1,250, as contended by the insurance company, depends upon whether the co-insurance clause in the policy is void under the provisions of Act No. 136 of 1922, forbidding the inclusion of any clause providing, in an insurance policy, that the assured shall be liable as co-insurer with the company for any part of the loss or damage which may be occasioned by fire, lightning or windstorm,—or whether the statute is inapplicable because of its proviso: "that the provisions of this Act shall not apply to policies issued upon property valued at more than $25,000 at the time of issuance of said policy, or upon personal or movable property."

According to the terms of the proviso— which we have quoted—if the property on which the policy was issued was valued at more than $25,000 at the time of the issuance of the policy, or if it was personal or movable property, the statute is not applicable—and hence the co-insurance clause in the policy is valid—and the liability of

the company is only $1,250. On the other hand, if the property on which the policy was issued was not valued at more than $25,000 at the time of the issuance of the policy, and if the property was not personal or movable property, the statute is applicable—and hence the co-insurance clause in the policy is not valid—and the liability of the company is $4,245.18, exclusive of the statutory penalty of 12 per cent and the attorney's fee. Stated another way, the proviso in the statute is that the co-insurance clause is prohibited only in policies issued upon immovable property not valued above $25,000 at the time of the issuance of the policy. There is no prohibition against a co-insurance clause in a policy issued upon either immovable or movable property valued above $25,000, or issued upon personal or movable property, regardless of its value.

The insurance company argues that, inasmuch as the policy protected the insured only against loss of the net profits which would have been earned had no fire occurred, and against such charges and expenses as must necessarily have continued during the interruption of the business, to the extent that such charges and expenses would have been earned had no fire occurred, therefore the property upon which the policy was issued, namely, the net profits which would have been earned had no fire occurred and the charges and expenses that must necessarily have continued to the extent that such charges and expenses would have been earned had no fire occurred, consisted of incorporeal movable property.

It is declared in article 470 of the Civil Code that, notwithstanding incorporeal property, consisting only in a right, is not, strictly speaking, susceptible of being classified either as movable or immovable property, nevertheless incorporeal property must be "placed in one or the other of these classes", according to the object to which the incorporeal property or right applies and the rules thereafter established in the code. The exact phraseology is that incorporeal things, consisting only of rights, "are placed in one or the other of these classes [movable or immovable], according to the object to which they apply and the rules hereinafter established." Following that mandate we must classify the incorporeal property or right on which the policy of insurance was issued in this case, and which is referred to as the right of "Use and Occupancy", according to the classification of the physical property to which the right applied; and, as the physical property to which the right was applicable in this case was immovable property, the right itself must be classified as incorporeal immovable property.

Among the classes of incorporeal things which are characterized as "immovable things", in article 471 of the Civil Code is the "use of immovable things." This incorporeal property or right, called "use of immovable things" is defined in article 626 thus: "Use is the right given to any one to make a gratuitous use of a thing belonging to another, or to exact such a portion of the fruit it produces, as is necessary for his personal wants and those of his family."

It is not likely that the writer of the coverage clauses in this policy of insurance, or in any policy issued on what is called "Use and Occupancy", had in mind the right which is defined in article 626 of the Civil Code. But, reasoning by analogy, if the warehouse, of which the right of "Use and Occupancy" was insured in this case, had belonged not to the insured but to some one else, his so-called right of use of the immovable property would have been characterized as incorporeal immovable property. It would be unreasonable therefore to characterize the right of use of the immovable property in this case as being incorporeal movable or personal property merely because the owner of the so-called use of the immovable property owned also the immovable property itself.

Perhaps the insurance in this case should be considered as insurance on the warehouse itself, and perhaps the amount of the unearned profits and overhead expenses that were lost by the fire should be considered merely as the extent of the company's liability. Under that aspect of the case, of course, the property on which the policy was issued was corporeal immovable property; and the proof in the record is that the value of the warehouse was much less than $25,000. We have taken the view that the policy was issued not upon the warehouse itself but upon the unearned profits and overhead expenses that were lost by the fire, because that is the view in which the case has been presented by the attorneys for the insurance company, and in that view of the case the attorney for the insured has met the issue. The items cov-

ered by the policy are described therein thus: "(a) the net profit which is thereby prevented from being earned, and (b) such charges and other expenses, including salaries of officers, executives, department managers, employees under contract and other important employees, as must necessarily continue during a total or partial suspension of business, to the extent only that such charges and expenses would have been earned had no fire occurred."

The insurance company introduced in evidence a statement of the business done by the insured during the period of six months preceding the fire, which statement is conceded to be correct. It shows that the net profits and overhead expenses which were insured amounted to $14,481.14 for the six months. From this it is argued by the insurance company that the net profits and expenses which were the subject matter of the insurance were valued at $28,962.28, or more than $25,000, for the full term of the policy, which was one year. We agree with the attorney for the insured that the length of the term of the policy has nothing to do with the value of the subject matter of the insurance, namely, the unearned profits and running expenses covered by the policy. The period for which the unearned profits and running expense should be computed is three month, because it is admitted that it required only three months to rebuild the warehouse, and the stipulation in the policy was that the company would be liable only for the actual loss of unearned profits and running expense sustained for a period not exceeding such length of time as would be required with

the exercise of due diligence and dispatch to rebuild or repair the warehouse if it should be destroyed or damaged by fire. According to the calculation made by the adjusters for the insurance company, and admitted by the insured to be correct, the value of the property insured, being the unearned profits and running expense for the period of three months, amounted to $7,240.57, which is far less than $25,000.

Our conclusion is that the property on which the insurance policy was issued was immovable property, and that it was not worth as much as $25,000 at the time of the issuance of the policy, and hence that Act No. 136 of 1922 was applicable to the policy and nullified the co-insurance clause.

The only remaining question is whether the insurance company is liable for the statutory penalty of 12 per cent and the plaintiff's attorney's fee, under Act No. 168 of 1908. The insurance company resists the demand for the penalty and attorney's fee on the ground that the insured did not furnish the proof of loss, required by the statute. That act provides that whenever any one holding a policy of insurance against loss by fire suffers such a loss and so notifies the insurance company or its agent it shall be the duty of the company to furnish the insured with blank forms for making out the proof of loss, and on receipt of the proof of loss from the insured the company shall pay the amount due under the policy within sixty days, or if the proof of loss so furnished by the insured is not satisfactory to the company, it shall proceed under the terms of the policy to ascertain and adjust the amount of the loss and

the company's liability under the policy and to pay the amount within sixty days from the date on which the company received the proof of loss; and, should the company fail to pay within the sixty days the amount due the insured under the policy after demand therefor, the company shall be liable to the insured, not only for the amount of the loss, but also for 12 per cent damages on the amount of the loss as determined by a court of competent jurisdiction, together with a reasonable amount for the attorney's fee for the prosecution and collection of the claim. There is a proviso that if the insurance company pays within the sixty days the amount which its agent or adjuster admits to be due the twelve per cent damages shall be computed only upon the difference between the amount paid or tendered and the amount judicially determined to be due the insured.

In this case the insured did not furnish the proof of loss on the forms furnished by the insurance company; and the reason given by the insured for the failure to furnish the proof of loss is that, before sending the blank forms for the proof of loss the company through its adjusters ascertained and adjusted the loss and thereafter denied liability beyond the amount of $1,250 which the company offered to pay in full settlement of the amount due under the policy. Immediately after the fire occurred the adjusters representing the insurance company made a thorough investigation and adjustment of the loss. They were given all of the books and records of the business by the insured, and had the full co-operation and aid of

the insured in ascertaining the amount of the loss. In fact there was no dispute about the amount of the loss, the only dispute being over the question whether the co-insurance clause in the policy was a valid limitation upon the liability of the insurance company. It was after denying liability beyond the amount of $1,250, and while persisting in the denial of liability beyond that sum, that the insurance company sent to the insured the blank forms for making out the proof of loss. The forms were sent out by the insurance company on the 58th day after the fire occurred, and about three weeks after the adjusters representing the company had completed their investigation and adjustment of the loss. It is not contended on behalf of the insurance company that its representatives might have changed their mind and paid more than the $1,250 if the insured had filled out and signed and returned to the company the forms which they furnished for the proof of loss. The company had obtained already all of the proof that could be furnished and all that the company really wanted. After an insurance company has made a complete investigation and adjustment of a loss against which it has issued a fire insurance policy, and has denied and is persisting in denying liability beyond a stated sum, it is not necessary that the insured, in order to hold the company liable for the statutory penalty and attorney's fee, shall furnish the proof of loss on the blank forms furnished by the company. McClelland v. Greenwich Insurance Co., 107 La. 124, 31 So. 691; Thompson v. State Assurance Co., 160 La. 683, 107 So. 489;

Talbert v. Northwestern National Fire Insurance Co., 167 La. 608, 120 So. 24.

The decision in Thompson v. State Assurance Co. is peculiarly applicable to this case. In that case there was some doubt as to whether the insurance company had furnished the insured with the blank forms for the proof of loss; concerning which the court said [160 La. 683, 107 So. 490]:

"If, however, such blank forms were furnished, they were so furnished long after the defendant had denied liability on the policy and after all the books and papers had been turned over to the adjuster, and the non-waiver agreement had been signed, as is shown by the letter of the adjuster dated November 25, 1920.

"Under the circumstances recited, the furnishing of proofs of loss would have been vain and useless.

"The defendant's assertion of nonliability is inconsistent with its demand for the production of proofs of loss."

On this subject the insurance company cites the case of Tedesco v. Columbia Insurance Co., 177 La. 142, 148 So. 8. But the reasons for which the court refused in that case to impose the penalty prescribed by Act No. 168 of 1908 are stated in the opinion rendered in the case, thus:

"The theater was destroyed by fire. The local agents of the defendant were advised thereof, and the defendant's adjusters informed the plaintiff that they were authorized to adjust the loss, and forwarded to him blank forms for proof of loss. For reasons which appear to be captious, the

plaintiff ignored the adjusters, questioned their authority to act in the premises, and vainly attempted to effect an adjustment of the loss with the defendant's local agents. This attitude of the plaintiff prolonged the adjustment and settlement of the claim, and his disagreement with defendant's adjusters as to the amount of the loss under the policy covering the piano and moving picture machines continued beyond the time fixed in section 3 of Act No. 168 of 1908, within which time the adjustment of the loss should have been completed and payment thereof made.

"Thereupon defendant's adjusters conferred with the plaintiff and his attorney, and on the day following this conference formally demanded an appraisal of the piano and moving picture machines in accordance with the terms of the policy. The plaintiff did not accede to this demand, but filed this suit."

The judgment appealed from is affirmed.