REID, Judge.
This is an action brought by Charles H. Hebert Co., Inc. against nine insurance companies on twelve policies seeking to recover for loss by a fire allegedly sustained by it on June 29, 1960.
There is no dispute as to the fire, nor as to the extent of the damages suffered by plaintiff-appellee, namely approximately $42,000.00. The dispute involves the interpretation of five policies covering stock of merchandise located in various stores which made up appellant’s retail merchandising establishment in the northern part of the City of Baton Rouge on the east side of Scenic Highway, the entrance to which bore municipal numbers 3910-14 Scenic Highway, 3916-22 Scenic Highway, 3926 Scenic Highway, 3936 Scenic Highway and 3946 Scenic Highway, and which building extended north to Weller Avenue and East to Powhattan Street, the entrance on Weller Avenue bearing municipal number 2130 Weller Avenue and the entrance on Pow-hattan Street bearing municipal number 105 Powhattan Street. 3926-3936 Scenic Highway was known as “the general merchandise and grocery store, and 3916-3922 Scenic Highway was known as “the shoe store” and 105 Powhattan Street was the warehouse which contained general merchandise and groceries. The fire destroyed the general merchandise and grocery store with all of its contents and slight damage from smoke and water was sustained to plaintiff’s other stores situated in the same block, including smoke damage to the shoe store. The warehouse suffered no damage of any kind.
The defendants named in plaintiff’s petition, which was filed December 12, 1960, were Aetna Casualty and Surety Co., American National Fire Insurance Co., The Home Insurance Co., Commercial Union Assurance Co., Ltd., Springfield Fire and Marine Insurance Co., Travelers Indemnity Co., and Lafayette Insurance Co. Suit was subsequently dismissed as against Lafayette Insurance Company.
Although the suit was brought against nine fire insurance companies on 12 policies, the issue resolved into an interpretation of only five of the policies.
The various groups of policies may be broken down as follows:
Insurer No. Amount Exhibit No.
Aetna 53355 $10,000 P-12
Fireman’s Fund 765306 3,000 P-11
Lafayette 329214 9,000 P-3
Home 5029 4,000 P-10
American National 50-53-88 4,000 P-1
which policies covered the contents of the general merchandise store described as follows:
“All stock, consisting principally of general merchandise and other articles not more hazardous while contained in the one story, composition roof, brick building, occupied as General Merchandise Store, situated numbers 3926-36 E/S Scenic Highway (Rated 3910-46), Baton Rouge, Louisiana (252). Map Sheet 203, Blk. 5.”
All of the above policies were dated September 23, 1959.
A sixth policy, also in this group, was issued by Continental Insurance Company in *131 the face amount of $2,000.00 and covered property described as follows:
“Stock of merchandise consisting principally of clothing and shoes, while contained in the one and two story, brick and concrete block, composition roof building, occupied as Clothing and General Mdse., situated 3910-36 Scenic Highway, Baton Rouge EBR Parish, La. (252).”
The above six policies will hereafter for convenience be referred to as “the general store policies.” The total amount due under said policies amounted to $32,000 and there is no dispute as to these policies, the companies being willing to pay the face amount due under the policies.
There were four policies, hereafter for convenience called “the shoe store policies”, as follows:
Insurer Date Amount Exhibit No.
Travelers P-6 September 9, 1959 $10,000
Lafayette P-4 December 7, 1959 1,100
Home P-9 December 7, 1959 2,000
Springfield P-7 December 10, 1959 10,000
which covered:
“On Stock of Merchandise consisting principally of clothing and shoes, while contained in the one story, composition roof, brick building, occupied as Clothing and Shoe Store, situated # 3916-22 E/S Scenic Highway, (Rated 3910-46), Baton Rouge, Louisiana (252). Map Sheet 203, Block 5.”
These policies were all similar except that in the Travelers policy the words “Clothing and Shoe Store” were underlined.
In addition to the above there were two separate one year policies, hereafter for convenience called “the warehouse policies” as follows:
Insurer Date Amount Exhibit No.
Commercial Union December 7, 1959 $ 4,000 ■ P-8
“On the stock of general merchandise, while contained in the one story, frame, iron-clad, iron roof building, situated # 105 W/S P'owhattan Street
(Rated 3910-46) Scenic Highway, Baton Rouge, Louisiana (252). Map sheet 203, Block 5.”
American National December 7, 1959 $ 1,100 P-2
“On stock of general merchandise in the one-story, frame, iron-clad, iron .roof warehouse, situated # 105 W/S Powhattan (Rated 3910-46 Scenic Highway) Baton Rouge, Louisiana (252). Map sheet 203, Block 5.”
As mentioned above, the suit against the Lafayette Insurance Company on its policy was dismissed. Insofar as Continental Insurance Company was concerned, it was a party to the suit but was not represented by counsel.
*132 Without going into the pleadings in detail, it will suffice to say that the petition contained three alternative pleadings for relief, each plea against different insurance companies and policies and demanded different amounts for .recovery.
In the original pleadings plaintiff asked for judgment under all of the above 12 policies, but in invoking the co-insurance clause, asked that each company pay 64.3% of the face amount of each policy. In addition there was a claim for smoke damage to certain merchandise plus the sum expended to pay for the services of a night watchman, which plaintiff alleged was not subject to the co-insurance clause, and for which plaintiff asked a prorated contribution from each company.
The first alternative plea asked for judgment against all of the companies on all pleas except against Commercial Union on its $5,000 policy and against American National on its $1,100 policy, both designated as warehouse policies. With the elimination of these two policies the contribution of each company under the co-insurance clause was said to be 87.7% of the face value of the policies sued upon. In the second alternative plea the policies described as the shoe store policies and warehouse policies were omitted and plaintiff prayed for the full face amount of all of the policies designated as the general store policies.
Defendants, Continental Casualty, Aetna, Fireman’s Fund, Home and American National forwarded drafts covering their pro rata share of the policies sued upon in plaintiff’s original petition and described as the general store policies. In addition, Home Insurance Company mailed its draft in the amount of $1,312.91 for its pro rata share under the $2,000 shoe store policy, and American National mailed its draft in the amount of $722.09 for its pro ,rata share under the $1,100 warehouse policy. The Trial Judge in his reasons for judgment stated that although plaintiff’s counsel retained these drafts, none of them was negotiated and plaintiff maintains none of them has been accepted in full or partial payment of any claims.
Those defendants who had forwarded drafts representing their pro rata share of the money sued upon by plaintiff in its original petition filed exceptions of res judicata to plaintiff’s supplemental petition alleging that proofs of loss had been submitted to defendants for stated amounts and drafts covering those amounts had been forwarded to plaintiff. These exceptions were referred to the merits. Pleas of prematurity were filed to plaintiff’s original petition based on the proposition that plaintiff had not submitted proofs of loss within 60 days. These exceptions were tried and for written reasons overruled.
The case was tried and fo.r written reasons assigned, dated July 26, 1961, and supplemental written reasons dated August 10, 1961, rendered judgment based on plaintiff’s second alternative plea as follows:
“For the reasons assigned there is judgment for plaintiff against the following defendants and in the amounts stated, with legal interest from judicial demand:
American National Fire Insur-surance Co. $4,000
The Home Insurance Co. 4,000
Fireman’s Fund Insurance Co. 3,000
The Aetna Casualty and Surety Co. 10,000
Continental Insurance Co. 2,000
“There is judgment for plaintiff against the following defendants and in the amounts stated:
Springfield Fire and Marine Insurance Co. $ 459.41
The Travelers Indemnity Co. 459.41.”
The Trial Judge rejected any claim of the plaintiff for damages to the general merchandise and grocery store under the shoe store and warehouse policies, stating that these policies only covered the goods located in their respective locations. The *133 judgment was rendered and signed in open Court on September 14, 1961, from which judgment the plaintiff has appealed.
As mentioned above, various exceptions were filed in this matter, all of which have been abandoned except those of prematurity filed by Aetna Casualty and Insurance Co., American National Fire Insurance Co., The Home Insurance Company and Fireman’s Fund Insurance Co., which said exceptions have been urged on behalf of all of these defendants by counsel for Home and American National.
The basis of the exceptions of prematurity was that the plaintiff failed to file proofs of loss as required by law and that the plaintiff instituted suit prior to the expiration of sixty days after the filing of proofs of loss and actually before time had lapsed to give the insurance company any time whatsoever to act upon the proofs of loss.
The exceptors base their argument on LSA-R.S. 22:691, the standard fire policy form, which reads thus:
“Requirements in case loss occurs— “ * * * within sixty days after loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured * * *. •
“When loss payable — The amount of loss for which this company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company * * *.
“Suit — No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with * *
The Trial Judge held that it had been shown:
“ * * * by the evidence taken on the trial of the exception that more than sixty days prior to the filing of this suit, T. Haywood Cook, Jr., adjuster for all the defendant companies, had agreed with plaintiff as to the exact amount of the loss. Counsel for plaintiff questioned Mr. Cook as to each and every item on the proof of loss, and the adjuster freely admitted he had knowledge of each and every fact shown on the proof of loss more than sixty days prior to the filing of the suit. It was needless for plaintiff to swear to it for there was absolutely no dispute between the adjuster and plaintiff. ■ The delay in settlement on the part of the defendant companies was due solely, as stated by plaintiff in its brief, to a dispute between the companies as to ‘what policies, issued by which companies, apply in what pro .rata amount to the agreed upon loss and damage suffered by the assured.’ Plaintiff avers it finally filed formal proofs of loss, not because they were necessary but with the feeling they might do some good and get the companies off ‘dead center.’
“In my opinion the decision of the Supreme Court in Arcadia Bonded Warehouse Co. v. National Union Fire Insurance Co., 206 La. 681, 19 So.2d 514, is controlling here. The syllabus of the case clearly states the Court’s holding:
“ ‘Where insurer made a complete investigation and adjustment of loss against which it issued a use and occupancy fire policy and denied liability beyond a stated sum and only dispute was whether a co-insurance clause was valid, it was unnecessary that insured, in order to hold insurer liable for statutory penalty and attorney’s fees, furnish proof of loss on blank forms furnished by insurer.’
“In my opinion the enactment of Section 651 had no effect on the cited decision since it obviously deals with other matters. The only difference be *134 tween the cited case and the instant case is that in the cited case the dispute was as to the validity of a co-insurance clause; here the dispute is as to the pro rata share of plaintiff’s loss each of the defendant companies is to pay. Each determined what it considered to be its share and denied any liability beyond that amount. The sum total of these determinations is less than plaintiff’s admitted loss, and hence this suit was necessary.
“The question of exceptors’ liability for penalties and attorney’s fees is not presently before the court. The sole question here is whether this suit is premature. In my opinion it is not.”
This Court is in accord with the ruling of the Trial Judge in this respect.
The plaintiff alleged six specifications of error in its appeal. The first four deal with the conduct of the Trial Court in the trial of the matter and with its ruling in connection with the attempted introduction of certain evidence by the plaintiff. Without going into this matter in any great detail, it is sufficient to say that an examination of the record clearly shows that the Trial Judge was most fair and judicious in his conduct of the trial, and even if the Court had permitted the plaintiff to introduce all of the evidence that counsel for plaintiff maintains he was not permitted to introduce, such evidence would have had no bearing on the outcome of the case.
The fifth allegation of error deals with the central point at issue herein, that is, the interpretation placed by the Trial Court on the policies at issue, namely the shoe store and warehouse policies. The interpretation of the policies in question revolves around the meaning of fhe following clause in the shoe store policies:
“On Stock of Merchandise consisting principally of clothing and shoes, while contained in the one story, composition roof, brick building, occupied as Clothing and Shoe Store, situated # 3916-22 E/S Scenic Highway, (Rated 3910-46), Baton Rouge, Louisiana (252). Map Sheet 203, Block 5.”
and the following clauses in the warehouse policies:
“On the stock of general merchandise, while contained in the one story, frame, iron-clad, iron roof building, situated # IOS W/S Powhattan Street (Rated 3910 — 46) Scenic Highway, Baton Rouge, Louisiana (252). Map sheet 20d, Block 5.” (Commercial Union Policy, Exhibit P-8)
“On stock of general merchandise in the one-story frame, iron-clad, iron roof warehouse, situated # 105 W/S Powhattan (252). May Sheet 203, Block 5.” (American National Policy, Exhibit P-2)
It is the plaintiff’s position that although the shoe store policies by their own terms cover stock consisting principally of clothing and shoes while contained in the building occupied as a clothing store at No. 3916-22 Scenic Highway, and the warehouse policies cover stock of general merchandise in the building situated at No. 105 W/S Powhattan Street, they actually cover stock wherever located in the plaintiff’s establishment.
The defendants contend that the policies only cover the contents located in the clothing and shoe store and in the warehouse and cannot be extended to cover the loss of the stock in the general merchandise and grocery sections of plaintiff’s establishment.
A great deal of the controversy in this case centers around the question as to whether or not the word “building” as used in the policies means the entire structure devoted to plaintiff’s operations. Plaintiff contends that architecturally, structurally and functionally the establishment was one building, and therefore, as it was one building the defendants had insured the stock of merchandise wherever found or contained or damaged in that building, thereby not *135 limiting the coverage to the clothing and shoe store in the case of those policies and to the warehouse in connection with the warehouse policies. In support of this contention the plaintiff stated that as can be seen by an examination of the quoted portion of the policies, that after “situated * * Highway” follows “(Rated 3910-46) * * Baton Rouge, Louisiana * * The defendant on the other hand contends that each separate portion of the store was a separate building and that the defendant insurance companies had only insured the goods located in those respective buildings. There was a great deal of evidence introduced at the trial in an effort to determine whether or not the establishment was or was not one building. The Trial Court held that in order to properly interpret the policies it was not necessary for it to determine whether or not the building was architecturally and structurally one building. It based its holding on the following reasons, that is, that insofar as the actual building itself was concerned, all of the parties involved, namely, the agent, the plaintiff and the companies, all treated the establishment itself as one building for the purposes of insurance. The Trial Court pointed out that all of the policies written on the building were issued by the same agent and that following correspondence with the Louisiana Rating and Fire Prevention Bureau, by letter dated December 14, 1959 (introduced in this record as Plaintiff’s Exhibit 27) it instructed the agent to deal with the establishment as one building in connection with the policies covering the building itself. In compliance with the Bureau’s letter the agent in the early months of 1960, either by endorsement of existing policies, or in connection with the renewal of expiring policies, changed the building policies so as to treat the establishment as one building.[1]
All of the five companies issuing the shoe store and warehouse policies were affected by this change in the building policies except The Home Insurance Co. The Trial Judge said:
“It is, therefore, clear that the Bureau, the agent, the companies and the insured recognized early in 1960 that for the purposes of insurance on the building or buildings the establishment, or the structure, was one building.”
The Court concluded that since the change in the description in the policies covering the building clearly showed an intent of the parties to treat the building itself as one structure for purposes of insurance, then it would follow that their failure to make the same change in the policies at issue here .clearly showed that it was not the intention of the parties to extend the coverage of the policies at issue to cover stock wherever located. In this connection the Court said:
“If the insured, the companies, the agent and the Bureau had intended that policies on stock of merchandise should cover stock situated anywhere in the establishment regardless of the description and location given in the policies, it is inconceivable to me that *136 they would not make the same changes in stock policies as were made in building policies early in 1960. The fact that they did not make such changes in the stock policies is, in my opinion, conclusive evidence that all parties concerned recognized that the policies meant, and intended that they should mean, precisely what they said, and that the coverage afforded by them was limited to the stock described while situated in the place stated, ‘but not elsewhere’ as each policy reads.”
The Trial Court stated that following the fire, plaintiff treated its insurance policies on stock of hardware, auto parts, accessories and home appliances in a manner entirely consistent with its views expressed above, that is, that the policies only covered the goods contained in the respective stores in which those goods were stored.
The plaintiff had insurance on its stock of hardware at 3942-46 Scenic Highway in the total amount of $6,000 and at 3946-54 Rear 3910-46 Scenic Highway in the amount of $12,500, and on the stock of auto parts, accessories and home appliances at 2130 Weller Avenue in the amount of $13,000, and in that regard the Trial Court said:
“The record does not show what loss this stock sustained as a result of the fire, but it has been stated in argument that plaintiff has made a settlement thereon. Be that as it may, plaintiff is not here contending that the insurance coverage on stock of hardware, etc., extends to all stock in the establishment regardless of location.”
and the Court concluded in its opinion:
“I have examined the authorities cited by the parties that are available to me. None of them seems to be altogether applicable to the facts here. I prefer to dispose of the matter on the basis of the reasons stated above, and for these reasons it is my opinion that the shoe store and the warehouse policies are not liable for any of the loss sustained by the stock in the general merchandise and grocery section of plaintiff’s establishment.”
On August 10, 1961 the Trial Court handed down supplemental written reasons for judgment in which it reviewed the various demands, and based upon its original reasons for judgment wherein it had rejected plaintiff’s contention that it was entitled to recover under the shoe store and warehouse policies, rendered judgment on plaintiff’s supplemental demand as set forth above and rejected plaintiff’s claim for penalties and attorney’s fees, holding that the action of the defendants in failing to pay plaintiff’s claims within sixty days after proof of loss, in view of the fact that there was a continuing contest, was not arbitrary, capricious or without probable cause.
The Trial Court based its decision in interpreting the policies at issue herein upon the intention of the parties as to the meaning of the insurance contracts.
The plaintiff produced witnesses, among whom were Mr. Charles Hebert, Jr., Secretary of the plaintiff corporation, Mr. Charles Hebert Sr., the founder of the firm, Mrs, Velma Dabadie, the office manager, all of whom testified that it was the intention of the plaintiff that the policies sued upon covered stock no matter where located in the establishment. The defendant, of course, introduced witnesses to contradict this testimony. There was a great deal of expert testimony introduced in an attempt to show whether or not there was one building or two buildings. Mr. Haywood Cook, the adjuster for the General Adjustment Bureau, adjusting the losses for the insurance companies involved testified. All of the policies of insurance covering the merchandise in the building were introduced in evidence. The Trial Court, after hearing all of this testimony and viewing the evidence, determined that it was the intention of the parties that the companies issuing the shoe store and warehouse policies were not liable for any loss sustained in the general merchandise and grocery sections of plaintiff’s establishment.
*137 After examining all of the record, this Court cannot conclude that the decision of the Trial Judge was manifestly erroneous.
The Trial Judge stated that he had examined all authorities cited and he did not feel that any of them were altogether applicable to the facts at issue. However, it would appear that the case of Hardin Bag Co. v. Milwaukee Mechanics’ Ins. Co. et al, 160 La. 439, 107 So. 298 (1926) fully substantiates the Trial Judge’s decision. That case dealt with the interpretation of a clause in an insurance policy covering secondhand rice sacks stored at the Appalachian warehouse in New Orleans. The policies of insurance issued by the Milwaukee Mechanics’ Ins. Co. and the Northwestern National Insurance Company, insured the plaintiff, the owner of the sacks “against all direct loss and damage by fire to said sacks while located and contained in the Appalachian warehouse, division No. 3, and not elsewhere.” Subsequent to the issuance of the policies a fire occurred in division No. 2 of the warehouse and destroyed the sacks which had been inadvertently stored in that division. The companies refused to pay and suit was brought to reform the policies so as to make the policies show that the goods were insured wherever located in the Appalachian warehouse. The theory of the suit for reformation was that it was the intention to insure the goods no matter where stored. The Court in the Hardin case stated:
“As the goods were insured by defendants only while stored in the Appalachian warehouse, division 3, and as they were destroyed while stored in another division, there can be no recovery on the policies. Thus, it is said:
“ ‘Place is ordinarily material to the contract and the very essence of the risk. With varying locations the risk is apt to vary, and whether it does or not the insurers have the right to know what risk they are assuming, and often decline an insurance because of .the amount already placed by them upon, or in, the same building.’ Richards on Insurance Law (3d Ed.) p. 292.
“There is every reason in this instance to apply the foregoing rule. In fact, the policies by their very terms insure the goods only while contained in the Appalachian warehouse, division 3, and not elsewhere, and hence, by their wording, clearly preclude recovery if destroyed while stored elsewhere.”
It should be emphasized that the Court stated that the policies by their very terms insured the goods while only contained in the Appalachian division No. 3 and not elsewhere, which is the same situation as in the case at issue. The policies sued upon herein, which are Louisiana standard statutory fire policies, contained the following language:
“ * * * to the property described herein while located or contained as described in this policy * * *, but not elsewhere.”
The Court in the Hardin case held that it was not the intention of the parties that the policies should cover goods unless stored in division 3. Therefore, applying the rule of thé Hardin case to the case at issue, it is the opinion of this Court that under the plain' meaning of the policies themselves, the shoe store and warehouse policies did not cover stock wherever located 'in the plaintiff’s establishment, but only covered stock contained in the division of the store designated as the shoe store and the warehouse.
This Court is in accord with the decision of the Trial Judge in holding that the defendants are not liable for penalties and attorney’s fees as it cannot be said that the companies actions in this matter were capricious and arbitrary.
Plaintiff’s sixth allegation of error contends that the Court should have assessed damages in the amount of $91.88 against the Home Insurance Company under its *138 Policy No. 5076, for its pro rata of the merchandise loss, smoke removal and watchman’s services, as they related to the shoe store, contending that the Home policy was identical with the Springfield and Travelers policies and that the Court gave judgment against the latter two in the amount of $459.41 for their pro rata share. It appears from an examination of the record that the plaintiff is correct in this contention and there is no apparent reason for a distinction to be made.
The judgment of the Lower Court is therefore amended so as to award the plaintiff the sum of $91.88 under The Home Insurance Company, Policy No. 5076, and as amended the judgment is affirmed at appellant’s cost.
Amended and affirmed.

. One example of this change can be seen by examination of the policy issued by the American National Fire Insurance Company policy covering the building. As originally written the description was as follows: “On the one story, metal roof, iron-clad building, occupied as a Grocery and Hardware, situated #105 W/S Pocahontas Street (Rated 3910-46 Scenic Highway) Lot 10, Sub. Prosperity, Baton Rouge, East Baton Rouge Parish, Louisiana (252). Map sheet 203, Block 5.” By endorsement the description was changed to read thus: “On the one and two story, brick concrete block with B-P approved roof building, occupied as Grocery, Warehouse, Dry Goods, Men’s Clothing, Hardware, Auto Parts, and Filling Station, Furniture Warehouse, Saloon, Electric Motors Repairing and Air conditioning repairing and Jewelers, situated 3910-46 and 3948-54 (R) E/S Scenic Highway Baton Rouge, La. (252) Map Sheet 203 Block 5.” Similar changes were made in the policies of Travelers, Commercial Union and Springfield either by renewal or by endorsements.