236 So.2d 510 (1970)
LOUISIANA MATERIALS CO., Inc.
v.
Alwynn J. CRONVICH, Sheriff of the Parish of Jefferson; Ross Ketchum, Director of the Dept. of Roads and Bridges of the Parish of Jefferson, Thomas F. Donelon, President of the Parish of Jefferson, Charles J. Eagan, Jr., Anton Pilney, Jacob H. Sciambra, Harold L. Molaison, George J. Ackel, Charles M. Miller and Beauregard H. Miller, Jr., Councilmen of the Parish of Jefferson.
No. 4189.
Court of Appeal of Louisiana, Fourth Circuit.
June 1, 1970.
Rehearing Denied July 6, 1970.
*512 G. Henry Pierson, Jr., and Neal D. Hobson, New Orleans, for plaintiff-appellant; Milling, Saal, Saunders, Benson & Woodward, New Orleans, of counsel.
Louis DeSonier, Jr., Bruce D. Burglass, Metairie, James O. Manning, New Orleans, for defendants-appellees.
Before REDMANN, BARNETTE and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff-appellant Louisiana Materials Company, Inc., (hereinafter referred to as "Company") is in the shell business. They own and operate numerous shell yards including one on the banks of Lake Pontchartrain adjacent to the outfall or Suburban Canal in Jefferson Parish. This particular shell yard is in an unincorporated area and is located between Lake Pontchartrain and a protection levee. The levee separates the shell yard area from the area which is now the Lake Villars Subdivision wherein numerous residences have been built. It is maintained by the Board of Commissioners of the Pontchartrain Levee District (hereinafter referred to as "Levee Board").
In order for vehicular traffic to come and go from the shell yard a ramp over the levee is utilized which exits on a shell road which leads to Richmond Avenue and Lake Villa Drive. The ramp has been in existence for many years (although the record is not clear on that point, it appears that it has been there since at least 1958), and until three or four years ago, was of ordinary shell construction at which time it was made into a hard-surface asphaltic thoroughfare by the Jefferson Parish Department of Roads and Bridges with the aid and cooperation of the Company. This was accomplished in order to improve the ramp roadway and eliminate dust. The Company's business includes dredging of shell from the bottom of Lake Pontchartrain from whence it is transported by barge to the Company's various shell yards *513 including the Lakefront shell yard in question herein. At that point, the barges are unloaded and the shell is then sold to various users including the Parish of Jefferson and its Department of Roads and Bridges, to private contractors and others, and is loaded into trucks for delivery to sites designated by the purchasers. In most cases, the purchasers of the shell provide the trucks to pick up the shell at the Company yard. Usually the Company arranges for delivery by contract with individual hired truckers. The Company neither owns nor operates any of the trucks which carry the shell away from the Lakefront yard.
The Company has operated at this site continuously since August of 1961 and has carried on the described operations since that time. Similar operations have been carried on from this location by other shell companies dating back to 1958. The Company has occupied the premises pursuant to an exclusive grant of right-of-way or servitude by the Levee Board which grant is effective until 1972. The right-of-way agreement grants to the Company the right of ingress and egress to the shell yard site and the levee referred to hereinabove is included within said right-of-way. It grants the Company the right to store its shell, sand, gravel, etc., within the designated area while said material is in transit between its unloading and its ultimate sale to various purchasers. Under the instrument the Company is authorized to do whatever is necessary to carry out its operations subject to, however, its securing whatever authority or permission may be required from any municipal, state or federal agency which may be affected. The grant prohibits the construction of any improvements on the shell yard site without prior written approval of the Levee Board and further provides that the exclusive right of way shall not interfere with any improvements to the levee which may be deemed necessary by the United States Engineers for the New Orleans District.
In addition to the right-of-way which the Company received from the Levee Board the record shows that the Parish of Jefferson has leased the same premises described in the right-of-way agreement to the Company on a year-to-year basis and for the same purposes as are set out in the right-of-way agreement. The last yearly lease expired on February 2, 1969, but an ordinance of the Parish of Jefferson allowed the Company to carry on its operations until February 28, 1970. The Company was notified by the Parish of Jefferson and its lease would not be renewed.
At the time that the Company began its operations in 1961 the land area across the levee from its site was undeveloped but as said area became subdivided and residences built, complaints were made from time to time by the steadily growing number of local residents, to the effect that the shell trucks operating to and from the Company's yard were causing inconvenience generally and specifically making noises and causing an unusual amount of dust. In 1965 the parish authorities designated certain routes which were to be used for shell trucks only. It is apparent that these special routes were not followed as directed and that it has been difficult to enforce the using of said routes.
On March 1, 1970, employees of the Department of Roads and Bridges of Jefferson Parish accompanied by a deputy of the Sheriff's Office of said Parish constructed a concrete and steel barricade across the edge of the ramp described herein and installed a large sign reading "Ramp Closed by Parish of Jefferson." This barricade, in effect, prevented all ingress and egress to and from the Company's yard to the public roads, the result being that the Company's business at that location has been completely shut down. Since that day a Deputy Sheriff of Jefferson Parish has been on duty prohibiting all ingress and egress to and from the premises via the ramp. The barricade was constructed by directive of the Jefferson Parish President. There is no parish ordinance authorizing the barricade nor has any eviction proceeding been brought in any court in connection *514 with the Company's possession and/or operation. Neither has there been any hearing before the Jefferson Parish Council in connection therewith.
On March 2, 1970, the Company instituted suit in the District Court styling same a possessory action and petitioned for preliminary and permanent injunctions against defendants who were designated as the Jefferson Parish Sheriff, the Director of the Department of Roads and Bridges of said parish and the Parish President and Council. Subsequently as a result of exceptions of non joinder, the Parish of Jefferson and the Pontchartrain Levee District were brought in as defendants. The company sought injunctive relief preventing defendants from interfering with and obstructing its possession and use and rights of ingress and egress to their shell yard through and over the roads and streets in Jefferson Parish.
After hearing on a rule for preliminary injunction, the District Court ruled adversely to the Company and it has appealed devolutively to this court from the lower court judgment refusing their prayer.
In denying the injunction sought by the Company the trial judge concluded that the defendants disturbed in fact the possessionM of the Company, but under the facts and circumstances of this case, the erection of the barricade was a reasonable exercise of the authority and power of Jefferson Parish.
The appellant specifies error by the trial judge as follows:
1) In refusing to grant a preliminary injunction in its favor preventing defendants from interfering with its use and possession of its Lakefront Yard and requiring defendants to remove the barricade.
2) In holding that the Company occupied the premises pursuant to a lease from the defendant Parish of Jefferson until February 28, 1970, and that the Company could be forcibly evicted without judicial proceedings.
3) In holding that the defendant Parish may stop the Company's operations because of alleged traffic violations.
4) In holding that the defendant Parish could stop the Company's operation without prior Council hearings or judicial proceedings to determine whether or not a nuisance existed and in holding that forcible eviction is a remedy for nuisance.
Louisiana Materials was in undisputed possession of the Lakefront Yard from 1961 until March 1, 1970, and still retains possession thereof, although denied ingress and egress by the barricade and armed guard posted by defendants.
Having been in possession for over one year, Louisiana Materials is entitled to be maintained in possession against the world, and is entitled to an injunction to maintain this possession.
The possessory action is one brought by the possessor of immovable property or of a real right to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted. LSA-C.C.P. art. 3655.
The requisites for a possessory action are found in LSA-C.C.P. art. 3658:
"To maintain the possessory action the possessor must allege and prove that:
"(1) He had possession of the immovable property or real right at the time the disturbance occurred;
"(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
"(3) The disturbance was one in fact or in law, as defined in Article 3659; and
"(4) The possessory action was instituted within a year of the disturbance."
*515 The plaintiff in a possessory action is entitled to injunctive relief to maintain the status quo during the pendency thereof. LSA-C.C.P. art. 3663.
Although article 3661 of the Code of Civil Procedure does not normally allow evidence of title to be admitted in a possessory action, it does allow such evidence in certain limited cases one of which is for the purpose of proving possession by a party as owner. Pursuant to this provision Louisiana Materials placed into evidence its right of way agreement from the Levee Board for the purpose of showing that it possessed as owner of a real rightthe right-of-way.
A right-of-way is a servitude, Mitchel v. Board of Commissioners (La. App. 4th Cir.), 161 So.2d 384, and hence is an immovable or a real right, LSA-C.C. arts. 470, 471; Arcadia Bonded Warehouse Co. v. National Union Fire Ins. Co., 206 La. 681, 19 So.2d 514; St. Charles Land Trust, Achille Guibet v. St. Amant, 253 La. 243, 217 So.2d 385, and comes within LSA-C.C.P. art. 3658.
The lower court found that there was a disturbance, and this disturbance is clearly a disturbance in fact. LSA-C.C.P. art. 3659.
The denial of access to and from the public roads, of course, amounts to an eviction for which injunctive relief is proper. Mossler Motor Co. v. Jos. Schwartz Co., 159 La. 467, 105 So. 511.
Defendants contended below that Louisiana Materials was not entitled to maintain the possessory action for the reasons:
1. It was not a possessor pursuant to LSA-C.C.P. art. 3660.
2. The right of way agreement from the Levee Board was not valid.
3. Title to the land was in other parties.
The thrust of defendants' argument that Louisiana Materials was not a possessor was that a lease from the Parish to Louisiana Materials expired on February 28, 1970, and the required one year had not passed. The District Court so found. However, the last of the yearly leases from the Parish expired on February 2, 1969 over one year earlier, as admitted by defendants' counsel. Louisiana Materials occupied the land adversely to the Parish for over a year thereafter. This defense therefore has no merit.
Defendants next claim, that the Levee Board had no authority to enter into the right-of-way agreement, was denied by the District Judge. Defendants offered no proof in connection with this claim.
Even if Louisiana Materials' grant from the Levee Board were wholly invalid, such would not be any defense to the possessory action. The Court of Appeal of Louisiana for the First Circuit in the case of Annison v. Womack, 200 So. 663, held that the validity of title is not an issue, stating:
"Where the possession is under a claim of ownership, the only purpose in referring to the deed by which the property was acquired is to show the nature and extent of the possession. The question of the title is not an issue." 200 So. 663, at 665.
Here, as in that case, the defendants cannot take advantage of any defects in plaintiff's title to justify defendants' disturbance of the possession. Real and actual possession for more than one year is all that is required. Hill v. Richey, 221 La. 402, 59 So.2d 434 (1959).
Louisiana Materials has clearly demonstrated its right to a possessory action. It has possessed the property in question in excess of one year, and was in possession at the time of the disturbance complained of. The disturbance was one in fact, defendants having effectively barred Louisiana Materials from any useful *516 occupation of the property, and the action was instituted within one year of the disturbance. Louisiana Materials is entitled to a preliminary injunction to preserve its possession pending the outcome of this proceeding.
Defendants seek to justify their action in closing the yard by claiming:
1. Louisiana Materials was simply
evicted at the expiration of its lease.
2. Louisiana Materials was not evicted; this barricade was merely the regulation of streets by the Parish.
3. Louisiana Materials' operations constitute a nuisance, and may be shut down.
These contentions must be considered against the background of the Constitutional requirements of due process and equal protection.
The Fourteenth Amendment of the United States Constitution provides:
"No state shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
Article 1, § 6 of the Louisiana Constitution provides for equal protection, although not using these words as such:
"All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality, or unreasonably delay."
Article 1, § 2 of the Louisiana Constitution provides:
"No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."
These provisions taken together form the basis of the due process and equal protection requirements of both federal and state law, which are similar.
The essential elements of due process of law are notice, and the opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829.
Defendants seek to escape the thrust of plaintiff's action by taking the position that Louisiana Materials was a lessee, and has no right to bring a possessory action, contending that the lease expired on February 28, 1969, and that Louisiana Materials could properly be evicted. The lower court so held.
It is clear that this forcible closing of the only means of ingress and egress amounts to an eviction. The only other means of ingress and egress would be to cross some other part of the Lake Pontchartrain Levee District levee; however such crossing is illegal, and in any event the evidence shows that other streets leading to the levee have similarly been blocked off. There can be little doubt that the parish would react by placing additional barricades if some other means of access to the property were to be found.
In fact, the last lease between the parties was executed on February 2, 1968 and expired on February 2, 1969. At that time the Parish refused to renew the lease, and the Vice-President of Louisiana Materials informed the Council Members that Louisiana Materials intended to maintain its possession in the premises pursuant to its rights from the Levee Board, and it did so maintain possession. It was one year and twenty-six days later that this action was taken by the defendants.
In any event it is clear that this forcible means of bringing about an eviction is procedurally incorrect even had there been a lease in effect. The courts of *517 Louisiana have long held that to evict a tenant at the expiration of a lease, the owner or one entitled to possession must bring an eviction proceeding which must be prosecuted to a final judgment after appeal before the tenant or one wrongfully on the property can be evicted. Self help is not permitted even where the rights are clear.
The jurisprudence in this state leaves little doubt but that the only procedural method by which a tenant may be deprived of possession is by eviction proceedings.
"* * * For more than a century the jurisprudence of this state has uniformly held that a lessor is without any right to remove the property of a tenant and take possession of leased premises without resort to legal action." (citing cases), Mena v. Barnard, 113 So.2d 332, 333 (La.App. 2d Cir., 1959).
A tenant is entitled to hold possession until deprived thereof by judgment. Liuzza v. Simms, 154 La. 339, 97 So. 470 (1923). In Mossier Motor Co. v. Jos. Schwartz Co., supra, the court held that the tenant was entitled to an injunction against the closing of an alleyway which constituted the only entrance and exit.
When considered with the due process requirements of both the State and Federal Constitutions, which require notice and an opportunity to defend in an orderly and correct proceeding; with the settled Louisiana law that an eviction can only be effected through an eviction proceeding in the courts; and with the fact that the claimed lease expired almost thirteen months previously, defendants' contention that this forcible eviction was within the rights of the Parish must be rejected.
Defendants next contend that this barricade, and the armed guard, were merely attempts to regulate the streets in the parish. They cite vague reports of trucks deviating from truck routes, speeding or otherwise violating traffic regulations.
Defendants have not presented any evidence to show that Louisiana Materials or any of its agents or employees have ever been arrested, convicted or even charged under any state or parish statute with any improper use of the roads and streets of Jefferson Parish either in connection with the operations from the Company's shell yard or from any other location. The statutes of Louisiana provide the penalties for improper use of the roads and streets, and these penalties may include, after a trial and conviction, the suspensions of drivers' licenses as well as jail terms and fines. No statute of the state or of the parish even purports to give to any public official or private citizen the right to barricade an individual's or company's property so as to prevent that individual or company from having access to the public roads and streets.
The taking of Louisiana Materials' property, without hearing, is likewise a deprivation of property without due process, if grounded in supposed traffic violations.
Under the Louisiana statutes and cases, the defendants have no right to deny to Louisiana Materials the right of ingress and egress to and from its property to the public roads and streets of the Parish of Jefferson.
The basic rights to use public roads are found in articles 453 and 454 of the Louisiana Civil Code. Article 453 provides:
"Public things are those, the property of which is vested in a whole nation, and the use of which is allowed to all the members of the nation: of this kind are * * * highways * * *."
Article 454 provides:
"Things which are for the common use of a city or other place, as streets and public squares, are likewise public things."
*518 While the Louisiana courts have seldom been required to consider such elemental rights, the Louisiana Supreme Court affirmed many years ago that a public road or street may be used by everyone whether residents of the locale, citizens or foreigners. Barbin v. Police Jury, 15 La.Ann. 544. The court later pointed out that municipalities have only the administration of public things, such as parks and streets, and that every person has the right to maintain an action to keep it open. Anderson v. Thomas, 166 La. 512, 117 So. 573.
While the parish is entitled to regulate the highways, such regulations "* * * must be reasonable, not arbitrary or capricious, must operate with equality, and must have some tendency to accomplish the proper end in view. An arbitrary interference with, or unreasonable restriction on, the fundamental rights with respect to the use of the highways is unjustified * * *" 40 C.J.S. Highways p. 248.
The Louisiana Supreme Court has recognized that the regulation of streets by the municipal authority must apply uniformly to all persons. City of New Orleans v. Badie, 146 La. 550, 83 So. 826.
Defendants lastly contend that the Lakefront Yard may be shut down because it is a nuisance.
Neither the defendants nor the parish legislative body may simply declare that operations are a nuisance and then proceed to suppress that operation. The operation must, in fact, be a nuisance and this can only be established after a full hearing before the Council and even then, the finding is subject to review by the courts. Oglesby v. Town of Winnfield, 27 So.2d 137 (La.App.2d Cir.1946); City of Shreveport v. Leiderkrantz Society, 130 La. 802, 58 So. 578 (1912). The Parish Council has had no public hearing to determine whether the operations of a shellyard constitute a nuisance, nor has it adopted an ordinance declaring all shell operations to be nuisances. In Oglesby, supra, the court stated:
"* * * The safe rule is to have the alleged nuisance judicially declared to be a nuisance and its abatement procured through processes of government orderly exercised. It is only in cases of emergency that abatement of a nuisance may be accomplished without prior adjudication of a court authorizing such to be done, and even in such cases, the abatement is done at the actor's risk and peril." 27 So.2d at p. 142 (Emphasis added).
The general rule is that a party should first be given the opportunity to show the legislative body and the court that its operations do not constitute a nuisance. The following has been quoted in many opinions:
"It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or of the state, within which a given structure can be shown to be a nuisance can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved or even by the city itself." Yates v. Milwaukee (1870, US) 10 Wall 497, 19 L. Ed. 984. 14 A.L.R.2d 82.
The determination by the legislative body is subject to judicial review. City of Shreveport v. Leiderkrantz, supra.
If the Company's operations constitute a nuisance, is may be shut down only after due proceedings to have it declared as such.
Even if found to be a nuisance, no law purports to give the Parish the right to evict Louisiana Materials from its property. Should the shell operation be found to be a nuisance, some other non-offensive use may be found for the property. To deprive the Company of its property in *519 these circumstances is a deprivation of property without due process.
For the reasons assigned the judgment of the District Court in denying plaintiff's request for injunctive relief is reversed and set aside and this case is remanded to said court with instructions to issue a preliminary writ of injunction directing the defendants to remove the barricade which was constructed on March 1, 1970, described herein and to cease interfering with the possession and right of use by the Louisiana Materials Co., Inc., of its Lakefront premises pending the outcome of this litigation after further proceedings not inconsistent with our ruling herein. Costs of this appeal to be assessed against appellees-defendants and costs in the trial court to await final disposition of this case.
Reversed and remanded.