HUGHES LUMBER COMPANY v. MADI-
SONVILLE SAW & PLANING MILL

(July —, 1926, Opinion and Decree.)

*(Syllabus by the Court)*

**1. Louisiana Digest—Mandate—Par. 1, 8.**

Agency is a question of law, to be deter-
mined by the relations of the parties,
as they in fact exist, under their agree-
ments or acts.

**2. Louisiana Digest—Brokers—Par. 2, 5,
12.**

The authority of a merchandise broker
need not be expressly conferred. At
the outset, he is the agent of the party
who first employs him. Later, he may
become the agent of the other party,
if the latter instructs him to close the
bargain, and under certain conditions,
he may be the agent of both.

**3. Louisiana Digest—Mandate—Par. 6, 22.**

Authority of an agent does not depend
upon conscious intention to confer it.
If persons intentionally do certain acts,
of which the legal effect is the creation
of authority, that authority will exist,
regardless of motive.

**4. Louisiana Digest—Brokers—Par. 2, 5
8, 9.**

In the absence of an expressed stipulation
in a broker's contract, as to who the
broker represents, all of the facts must
be taken into account in determining
the question—such as, who first set
the agent in motion? Who gave him
his instructions? Whose interest is he
to protect? Who is to pay his commis-
sion? Who could complain as to his
negligence? Will holding him to be
the agent of one party, leave the other
without a representative present?

**5. Louisiana Digest—Sales—Par. 58, 82.**

Time of shipment, even though it be made
the essence of a sale contract, may

be waived by the purchaser, as such
waiver may be express, or it may be
implied from any conduct on the pur-
chaser's part, inconsistent with an in-
tention to insist on punctual perform-
ance.

Appeal from Civil District Court, Divi-
sion "F", Hon. Percy Saint, Judge.

Action by Hughes Lumber Company
against Madisonville Saw & Planing Mill.

There was judgment for plaintiff and de-
fendant appeals.

Judgment affirmed.

F. P. Burns and St. Clair Adams, of
New Orleans, attorneys for plaintiff and
appellee.

J. D. Dresner, of New Orleans, attorney
for defendant and appellant.

MAY, Judge ad hoc.   This is a suit by
the Hughes Lumber Company, a Missis-
sippi corporation, against Dendinger, Inc.,
owner and operator of the Madisonville
Saw & Planing Mill.

The claim is for five hundred and forty-
three dollars, ninety-five cents ($543.95),
being the contract price of certain lumber,
purchased by defendant from plaintiff.

On September 27, 1920, defendant sold
to the Lucas E. Moore Stave Company,
Inc., of New Orleans, a carload of lumber,
at the price of forty dollars ($40.00) per
thousand feet, "F.O.B. New Orleans," "Ship
at once".

On or about October 19, 1920, W. L.
Tomlin, an employe of the defendant com-
pany, at a fixed salary, placed an order
with S. L. Dawson, doing business as the
Dawson Lumber Company, of Meridian,
Mississippi, for the lumber in question, at
the price of twenty-three dollars ($23.00)
per thousand feet, F.O.B. car at point of

shipment. Time of shipment to be "prompt".

On October 20, 1920, Dawson ordered from plaintiff, the requisite lumber, at twenty-three dollars and fifty cents ($23.50) per thousand feet, F.O.B. mill, with instructions to ship to C. R. Phillips, at Canandaigua, N. Y., with invoice to Madisonville Saw & Planing Mill, New Orleans. This order from Dawson to plaintiff, contains the notation, that it is in confirmation of purchase, and requests plaintiff to rush shipment, and to "ship this week sure", and a further notation that Dawson's commission is one dollar ($1.00) per thousand feet. The following appears printed upon the order: "Acknowledge receipt of this order direct to customer, which will be confirmed direct to you." Accompanying the order, is a letter from Dawson, of even date, calling attention to the fact that "We have increased our price of twenty-three dollars ($23.00) to twenty-three dollars and fifty cents ($23.50), and have charged you one dollar ($1.00) per thousand commission.

On the same day, Dawson wrote defendant as follows:

"We are enclosing herewith copy of our order No. 1595 placed with the Hughes Lumber Company, of this city, and have just wired you car number as per enclosed confirmation.

"You will note that we have increased your price fifty cents (50c) as this will come from a mill that takes a two cents (2c) less rate than from here."

On the same day, Dawson wrote plaintiff:

"Kindly refer to our order for the account of Madisonville Saw & Planing Mill, of New Orleans, and change shipping instructions to read as follows:
"Lucas E. Moore Stave Company,
"New Orleans, La."

On October 22, defendant wired to plaintiff, advising of Dawson's error in shipping instructions, and asked for shipment to Lucas E. Moore Stave Company.

Immediately upon receipt of the above wire, plaintiff wrote defendant, stating that Dawson had already discovered the error in shipping instructions, and that plaintiff was advising its mill, as to the necessary change, and continues, "They were just ready to begin loading, so everything will be all right, and shipping papers will be forwarded with the least possible delay."

In his testimony, Mr. Hughes, president of the plaintiff company, says that when he received the original order from Dawson, for New York shipment, he arranged for loading into a Pennsylvania car, and that when he received notice from Dawson to hold for further shipping instructions, he telephoned his mill at DeKalb, Mississippi, to hold shipment, and the mill thereupon applied the Pennsylvania car on another order.

Mr. Hughes says further that, at that time, cars were very scarce, and that "many railroads called for home routing", and that it might be for that reason that the shipping clerk (now dead) could not use the Pennsylvania car, and that he finally had to order an L. & N. car, in which to make the New Orleans shipment, and that a car could not be procured on an instant's notice.

On October 22, 1920, defendant sent plaintiff, a confirmation of the order, at the price of twenty-three dollars and fifty cents ($23.50), per thousand feet, and for shipment to Lucas E. Moore Stave Company, New Orleans.

On November 1, 1920, plaintiff shipped the lumber, consigned to Lucas E. Moore Stave Company; and at the same time,

mailed to the defendant an invoice, with bill of lading attached.

On November 3, 1920, defendant sent bill of lading with defendant's invoice to Lucás E. Moore Stave Company.

On November 4, 1920, Lucas E. Moore Stave Company, wrote defendant acknowledging receipt of bill of lading covering shipment in L. & N. car 4875, and stated, "We wrote you yesterday that owing to the delay in filling this order, we decided to have same cancelled. Last week when we 'phoned you, stating that if you did not fill the order immediately, that we would cancel it right then and there, you gave us a car number, Erie 98375, which you stated you were loading that day and would go forward the following day. We repeatedly requested you to furnish us with bill of lading covering shipment of this car, but to no avail. From the papers just furnished us, it is very clear to us that the above car mentioned never was intended to be loaded for us, and that you had not started shipment forward. We are returning to you your invoice and bill of lading, and we will not accept this car of lumber, having purchased our requirements elsewhere".

On November 3, 1920, Dawson wrote plaintiff, asking for status of the order; stating that it was given with the distinct understanding, that shipment would be made immediately; that fifteen days had elapsed; that defendant had just advised the writer that unless defendant was immediately furnished with invoice and bill of lading, the stave company would buy on the local market, and adding that if bill of lading had not already gone forward, to let defendant have same not later than Thursday, November 4.

On November 13, 1920, defendant wired plaintiff, cancelling order and plaintiff re-plied on November 15, 1920, that it had intended loading in Pennsylvania car 83563, but was advised to hold for shipping instructions; that mill applied above car on another order and loaded in L. & N. car; that plaintiff was not to blame and insisted that shipment be accepted.

On November 16, 1920, defendant wrote plaintiff, that the shipment had been definitely refused by the Lucas E. Moore Stave Company, on account of erroneous car number given, and that defendant would have to unload the lumber and make the best possible disposition of it.

On February 5, 1921, defendant wrote plaintiff, again referring to the fact that the lumber had been refused by Lucas E. Moore Stave Company because of failure to ship in car number given by plaintiff, and stating that it was necessary, after some demurrage had accrued, to have the car unloaded in the defendant's yard, where it was still intact. Defendant wrote further, that it had referred the matter to the Lumbermen's Credit Association for an opinion, and that plaintiff would be advised, if Lucas E. Moore Stave Company was forced to pay for the shipment, adding "If so, we will of course pay you".

On September 21, 1921, defendant wrote plaintiff, advising that the lumber was still intact, in the defendant's yard; that the defendant had hoped for instructions as to disposal; that freight, demurrage, unloading and stacking charges, etc., amounted to two hundred and fifty-nine dollars and nineteen cents ($259.19), and that storage charges would not be made until November 21, 1921.

On February 21, 1923, plaintiff brought suit, and defendant answered, admitting the order given by Dawson to plaintiff, and its confirmation by defendant, and fur-

ther admitting that incorrect shipping instructions were furnished plaintiff by Dawson.

Defendant denied any indebtedness, however, for the stated reasons, that Dawson is a manufacturer's agent; that defendant's employe, Tomlin, placed the order with Dawson, giving the latter correct shipping instructions; that Dawson was plaintiff's agent, and was paid a commission by plaintiff; that the lumber contracted for by defendant, had been ordered by the Lucas E. Moore Stave Company, who wanted prompt shipment, and that this was known by plaintiff's agent, Dawson, and by plaintiff; that plaintiff's agent, Dawson, on October 20, 1920, wired defendant that the lumber was being loaded in Pennsylvania car 83563; that in order to satisfy the Lucas E. Moore Stave Company, that its order was being given prompt attention, this information was furnished to them, and that the stave company, thereupon requested invoice and bill of lading, and same not coming to hand, threatened to cancel the order unless immediately furnished the car number; that thereafter, two other car numbers were furnished by plaintiff, and the shipment still not coming to hand, the Lucas E. Moore Company declined to accept same, feeling that on account of the various car numbers given, they could apparently place no reliance upon the information furnished.

Defendant further answers, that it was put to certain expense, by way of freight, and storage charges, etc., and reconvenes for such charges, together with loss of profit on sale.

There was judgment in the trial court for plaintiff, in the sum prayed for, the trial judge, in written reasons for judgment stating that he found Dawson to be defendant's agent, and that the shipment was made by plaintiff in the customary manner.

Upon trial, Mr. Hughes, president of plaintiff company, testified that Dawson is in the commission lumber business; that he, Hughes, alone solicited orders for his company; that Dawson came to him and said that he had an order from the Madisonville Saw & Planing Mill for some 2x10, and some small timber; that witness told Dawson what the price would be, and accepted the order; that witness did not employ Dawson to obtain the order; that Dawson would get orders and take them around to different concerns; that defendant subsequently wrote confirming the order, and changing the shipping instructions; that witness thinks he received a telegram from defendant, saying that Dawson had made a mistake in shipping instructions; that plaintiff shipped the lumber on October 31, 1920; that the original bill of lading and invoice were sent to defendant; that so far as witness knows, there were only two cars involved in this shipment, the Pennsylvania car, which had to be released upon changing shipping instructions, and the L. & N. car, in which the lumber was shipped to New Orleans; that witness has no recollection of ever having given defendant notice of car Erie 98375, and that there is nothing in his records, pertaining to such a car and number; that witness believes he finally got the correct shipping instructions on October 22, 1920, and that the shipment was made November 1, 1920; that defendant wired plaintiff, on November 13, and after the car had been on the road thirteen days, that the shipment was refused on account of errors in car numbers given; that so far as witness can recall, Dawson had, after giving the correct shipping instructions, nothing further to do with the matter, except that he wrote the letter of Sep-

tember 3, saying that if plaintiff, did not furnish the lumber, they would have to buy it on the local market and charge plaintiff company with the difference. Hughes further says, that at the time Dawson wrote that letter, defendant had the invoice and bill of lading; that witness did not consider Dawson as his representative; that Dawson had the order and would have gone with it to anyone; that Dawson placed orders with no certain person, but with anybody; that he, witness, did not employ Dawson, but paid him a commission; that the usual commisison is fifty cents (50c), but Dawson made him pay one dollar ($1.00); that witness wanted defendant's formal order, "before he would have made the shipment"; that he did not offer Dawson a commission to sell the lumber; that Dawson told him he had the order and, "I said, who is it for, and he gave me the name of the concern, and I asked the price and they told me. I do not remember whether twenty-three dollars ($23.00), or twenty-three dollars and fifty cents ($23.50). He said, will you accept the order, and pay me a commission, and I sad I would." Hughes further testifies, that defendant confirmed the order at twenty-three dollars and fifty cents ($23.50).

Paul A. Blanchard, in the employ of defendant as assistant to the general manager, testifies as to the duties of defendant's employe, W. L. Tomlin. Witness also, wrote the letter of September 22, 1921, the plaintiff, enumerating the various disbursements by defendant, such as freight, and unloading charges, and says that he saw the cancelled vouchers for those disbursements. He further testifies, that the lumber in question, was stacked in defendant's yard, where it has received the best of care, except that it might have been put in a shed, and that the charge of five dollars ($5.00 per month, for storage, made by the defendant, is very reasonable.

Mr. Dendinger, vice-president and general manager of the defendant company, says that he signed the vouchers for the disbursements testified to; that Tomlin was a paid traveling salesman; that his company was never able to get the Lucas E. Moore Stave Company to accept the lumber; that witness never employed Dawson to represent him in the lumber's purchase; that his company rendered an invoice to the Lucas E. Moore Stave Company on November 3, 1920; that the bill of lading and invoice from plaintiff were in defendant's possession on that date; that according to the custom of the trade, an order designating "prompt shipment" should be made within a week, and that when lumber is sold to go forward "at once", it means immediately, but with a recognition of the fact, that you cannot load lumber at a mill on receipt of an order, but it would probably take a day or two; that defendant company had made the sale to the Lucas E. Moore Stave Company on September 27, 1920, and that the contract covering such sale called for "at once" shipment; that he considered that in purchasing the lumber from plaintiff on October 19, 1920, for delivery to Lucas E. Moore Stave Company, his company had complied with the conditions to ship at once, unless there was some other understanding between his salesman and Lucas E. Moore Stave Company; that Lucas E. Moore Stave Company did not reject the shipment because of the delay, but because of the giving by plaintiff of various car numbers, which irritated the representative of the stave company so much, that he did not want to do any further business; that "ship this week sure", means within the week of the day of contract, which in

the present instance, meant before November 1st; that defendant waited until November 13, before notifying plaintiff that defendant would not accept the shipment, because the Lucas E. Moore Stave Company declined the shipment about that date. Later on, this witness again admits that Lucas E. Moore Stave Company declined the shipment on November 3, 1920.

It is fortunate that the issues of fact presented to us for consideration are quite clear and largely undisputed.

In truth, the entire transaction, out of which this controversy arises, is fully outlined by the documentary evidence on file, and the testimony of the witnesses, except as to matters of detail, is of slight value other than for the identification of the exhibits.

It remains for us, therefore, to consider these facts in connection with the defenses made, the first and basic defense being that Dawson was plaintiff's agent, and that acting in such capacity, his mistake in shipping instructions was the mistake of plaintiff.

In support of this position, defendant says that its traveling representative, Tomlin, placed the order with plaintiff through Dawson, who is a manufacturer's sales agent, and that being a sales agent, Dawson was necessarily agent for plaintiff, who paid him a commission, while the only person who received compensation from the defendant was Tomlin, who was already a salaried employe.

On the other hand, plaintiff's president, Hughes, says that Dawson was never employed by his company to secure the order, but would take orders and submit them to anybody; that in the present instance, Dawson came to him with the order and plaintiff named the price and closed the contract; that the usual commission in matters of this sort is Fifty Cents (50c), but that Dawson made him pay One Dollar ($1.00).

We do not agree with defendant, that because Dawson was a "Sales Agent" and was paid a commission by plaintiff, he was necessarily plaintiff's agent.

The authority of a merchandise broker, need not be expressly conferred, and in practice, ordinarily is not. At the outset, the broker is the agent of the party who first employs him, but he becomes the agent of the other also, when the latter instructs him to close the bargain, (Mechem on Agency, Second Edition, Sec. 2375).

Authority is not dependent, upon proof of a conscious intention to confer it. Here as elsewhere, if parties intentionally do certain acts, and the legal effects of those acts is the creation of authority, the authority will exist, even though the parties do not actually contemplate that result. (Mechem on Agency, Second Edition, Sec. 247).

In a case such as the present one, where there is nothing definite, in the contract of employment, as to who the broker represents, all facts must be taken into account, in determining the question. Such as who set the agent in motion originally? Who gave him his instructions? Whose interest was he primarily to protect? Who was to pay him? Who could complain as to his negligence? Will holding him to be the agent of one party, leave the other without a representative present? (Mechem on Agency, Second Edition, Section 300.)

Applying these inquiries to the instant case, we find that the defendant, first engaged Dawson, and in fact, from the order given to Dawson, it would appear that

he, himself, is the seller, and not the agent of any one.

Defendant says that Dawson was, from the very beginning, plaintiff's agent, but certainly plaintiff would not be liable in damages for breach of contract, if Dawson had never placed the order with him. Continuing on, we find that the defendant, contracted with Dawson, both as to price and terms of shipment, and certainly neither price nor terms could be, in any way, binding upon plaintiff, until he entered into a contract embodying them.

As to whose interest was he primarily to protect, Dawson certainly deemed defendant to be his especial charge, else why did he write plaintiff on November 3, 1920, saying, "We gave you the order on October 20, with the distinct understanding that the car would move immediately * * *. The Madisonville Saw & Planing Mill called us this morning and advised that unless they were furnished with invoice and bill of lading immediately, their customer would buy on the local market and charge the difference to you * * *. We ask that if invoice and bill of lading have not already gone forward, that you let Madisonville Saw & Planing Mill have same not later than Thursday, 4th."

Then again, turning to the order, given to Dawson by plaintiff, we find printed therein, "Acknowledge receipt of this direct to customer, which will be confirmed direct to you".

From the foregoing, it is quite clear that Dawson was primarily to protect defendant's interest, and so construed his duty, and that plaintiff only, could complain of his negligence.

It is true that plaintiff paid Dawson's commission, although in view of the fact that Dawson charged one dollar ($1.00) commission instead of fifty cents (50c), and increased the price of the lumber from twenty-three dollars ($23.00), to twenty-three dollars and fifty cents ($23.50), with defendant's approval, it would look very much as if half of the commission was paid by defendant.

We do not believe however, that the payment of the commission, is the controlling factor, determining agency in this case. It may be that Dawson, was the agent of both, but he was certainly defendant's agent when he passed the order to plaintiff, with shipping instructions, and when he wrote the letter of November 3, 1920.

Defendant next takes the position, that such error in shipping instructions was corrected by Dawson on the same day that it was made and that plaintiff should not be allowed to use such error as an excuse for any delay in shipment.

Plaintiff answers this by saying, that when it made the contract with Dawson, it had an available car, and was ready for immediate loading and shipment to Canandaigua, N. Y., but that when the change in shipping instructions was made, plaintiff had to abandon shipment in that car, and wait for another, that could be used to transport the lumber to New Orleans.

It seems to us, however, that the issue presented for determination is not so much affected by the lapse of time between the making of the original contract and the notification to plaintiff of error in shipping instructions, as it is by the fact that plaintiff's contract to ship to New York, is altogether different from the amended contract calling for New Orleans shipment. The record shows that when plaintiff received notice from defendant of change in shipping instructions, he replied that he had already been so advised

by Dawson, and that it was all right, and that shipping papers would be forwarded with the least possible delay.

Plaintiff's obligation under the corrected contract was, therefore, to ship with the least possible delay, and we find nothing to indicate that he did otherwise.

Suppose however, that this mistake in shipping instructions, being so promptly corrected was not, in fact, the cause of any justifiable delay, and that plaintiff's obligation was still "to rush this shipment all possible" and to "ship this week sure".

The term "prompt shipment" appears in the order from defendant to Dawson, and may be considered as embodied in the instructions from Dawson to plaintiff to "rush this shipment all possible", and defendant's vice-president, Dendinger, testifies that according to the custom of the trade, "prompt" means within a week, and "ship this week sure" · means shipment within the week of day of contract.

The only testimony in the record however, as to the proper interpretation to be given these terms, is that of Mr. Dendinger, and the force of his testimony, is most decidedly affected, when he says further, that the lumber in question, was sold by his company to Lucas E. Moore Stave Company, on September 27, 1920, under a contract calling for an "at once shipment" while his company, did not contract for such lumber through Dawson until October 20, 1920, but that he, the witness, considers that his company was, nevertheless, acting in compliance with its obligation to the Lucas E. Moore Stave Company, "unless there was some other understanding between our salesman and the buyer".

But even had plaintiff's obligation been to ship within the week, Dawson by his

letter of November 3, 1920, acquiesced in and ratified, any and all delays up to that date, and defendant's failure to decline the shipment until November 13, 1920, or ten days after its receipt of bill of lading and invoice from plaintiff, was in itself a ratification.

We see no error in the judgment appealed from and it is therefore,

Affirmed.