171 So.2d 264 (1965)
Percy A. ROBICHEAUX, Plaintiff-Appellee,
v.
CALVERT FIRE INSURANCE COMPANY, Defendant-Appellant.
No. 6289.
Court of Appeal of Louisiana. First Circuit.
February 1, 1965.
Irwin R. Sanders, New Orleans, for appellant.
Harold J. Rhodes, Berwick, for appellee.
*265 Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.[*]
ELLIS, Judge.
Plaintiff, Percy A. Robicheaux, instituted this action against his automobile collision insurance carrier, Calvert Fire Insurance Company, defendant herein, to recover the sum of $843.45 plus attorneys fees and penalties as provided by LSA-R.S. 22:658. The principal amount claimed is the cost of repairs to the insured vehicle necessitated by an accident which occurred on September 21, 1961, a date on which the policy of insurance was in full force. The defendant insurance company filed a general denial and further alleged in Article 8 of the answer:
"That defendant has never been properly, within the conditions of its insurance policy, * * * notified of the loss herein sued upon, so that no penalties could possibly be granted under these conditions."
Whether this allegation was intended as a defense to the entire suit or was interposed only to defeat the demand for penalties and attorneys fees, we cannot determine. Under the law of this state, it is not a defense to the principal demand, though it might be sufficient to preclude the allowance of penalties and attorneys fees.
The lower court gave judgment for the plaintiff on the principal demand and declined to award penalties and interest. Defendant appealed suspensively.
The undisputed facts show that plaintiff, on August 9, 1961, purchased a new 1961 Chrysler automobile from St. Mary Motor Company, Inc., of Franklin, Louisiana. The financing and collision insurance were arranged for and handled by Mr. Haydel, president of the motor company. The financing was done by Commercial Credit Corporation and the insurance policy was written by the defendant insurance company. Both Commercial Credit Corporation and Calvert Fire Insurance Company are subsidiaries of Commercial Credit Company. The automobile dealer received a commission from Commercial Credit Corporation for the finance business and an additional commission for the insurance business amounting to twenty per cent of the gross premium. The latter commission was obviously deducted from the premium due Calvert but was actually included in a single check issued by Commercial Credit Corporation to the dealer representing the purchase of the vehicle and the two commissions.
Calvert has no agents to solicit business in this state but receives business in transactions such as this. Calvert's claim adjuster in the St. Mary Parish area is Mr. William Crenshaw. Mr. Crenshaw testified that his automobile was his office and that, although he maintains a post office box and answering service, he usually receives notices of claims through the offices of Commercial Credit Corporation in Lafayette.
Mr. A. J. Guidry is the District Manager of the Commercial Credit Corporation in Lafayette. He testified that claims were usually received from dealers such as Mr. Haydel by mail or telephone and that upon receipt a proper note is made in duplicate. One copy is forwarded to Mr. Crenshaw for disposition and the duplicate copy is retained in Lafayette.
Being unable to improve on the following quoted portion of the written reasons for judgment rendered by the Honorable S. O. Landry below, and being in complete accord and agreement therewith, we quote from them as follows:
"In the morning of September 21, 1961 Mr. Robicheaux was involved in a collision at Schriever with a 1958 Chevrolet driven by a lady. He had his bent fenders straightened out so that he *266 could drive his car, and drove it to St. Mary Motors. He reported the incident to Mr. Haydel and also told him that the lady was `in the wrong' and that he was `in the right'. He told Mr. Haydel to do whatever was necessary to get his car repaired. He testified that he felt secured as there were two insurance companies liable for his damages. The lady had public liability insurance on her car.
"A day or so later an adjuster from LeBlanc's Appraisal Service, of Lafayette, reported and proceeded to make an estimate of the necessary repairs. Mr. Robicheaux and Mr. Haydel were present and accepted the estimate. Mr. Haydel made the repairs, amounting to the amount sued for, $843.45. But the insurance company for which LeBlanc's Appraisal Service made the appraisal, apparently, did not pay for the repairs.
"Mr. Robicheaux took and used his car after it was fixed, believing that the repairs had been, or would be, paid.
"In April 1962 Mr. Robicheaux had another accident with his car. This time he drove off the road when he failed to negotiate a curve. There was no other car involved. He had his car brought to St. Mary Motors. He again reported to Mr. Haydel. In a day or so Mr. Crenshaw arrived and made an estimate. The claim was properly settled. But Mr. Robicheaux purchased another car. A new finance arrangement was made, and the original insurance policy with Calvert was accordingly cancelled. Mr. Robicheaux testified that at that time he believed that the first repairs to his car had been paid. Mr. Crenshaw testified that he did not know of the claim. There was no mention of this claim, therefore, in that transaction.
"During the following year, 1963, Mr. Haydel made demand upon Mr. Robicheaux for payment of the repairs. Not knowing what else to do, Mr. Robicheaux employed an attorney. In the month of May, 1963, the attorney made a written demand for payment on Calvert, through Commercial Credit. Mr. Crenshaw received this demand in due course.
"He testified, and so did Mr. Guidry, that this was the first they knew of the claim. They checked their files to ascertain if a previous notice of the claim had been received. They found none. Mr. Crenshaw also inquired of his home office if a previous claim had been made. There appeared to be none.
"Mr. Haydel is uncertain that he notified Calvert of Mr. Robicheaux's first collision. He testified that he believes that he did.
"Meanwhile, on July 10, 1963 Mr. Robicheaux's attorney made a second demand by mail for payment and enclosed a copy of the estimate of repairs.
"In the month of September, following, Mr. Crenshaw called upon the attorney and left with him papers upon which to make proof of loss, and for Mr. Robicheaux to execute an agreement of subrogation. These were not executed.
"On November 29, 1963 Mr. Robicheaux filed this suit.
"There is no dispute that the policy covers the risk sued upon, if plaintiff is entitled to recover.
"Calvert depends upon the provisions of paragraphs 5 and 6 of the Conditions of the policy to escape liability.
"Paragraph 5 provides:
"`5. Action against CompanyNo action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy.'
*267 "The pertinent provisions of paragraph 6 provide:
"`6. Insured's Duties in Event of LossIn the event of loss the insured shall:

* * * * * *
"`(b) give notice thereof as soon as practicable to the company or any of its authorized agents and also, in the event of theft, to the police;
"`(c) file with the company, within 91 days after loss, his sworn proof of loss in such form and including such information as the company may reasonably require and shall, upon the company's request, exhibit the damaged property and submit to examination under oath.'
"The substance of these provisions is that Mr. Robicheaux cannot bring an action against Calvert until he has complied with all the terms of the policy, nor until thirty days after he has furnished it with proof of loss.
"The pertinent terms with which he is alleged not to have complied are (1) to give notice of his claim to the company, or to any of its authorized agents, as soon as practicable, and, (2) to file with the company, within 91 days after loss, his sworn proof of loss.
"There is no dispute that Mr. Robicheaux did not file with the company his proof of loss. There is some dispute that his transaction with Mr. Haydel for the repair of his car constituted a notice of his loss to Calvert, through Mr. Haydel as its agent.
"It appears that the transactions had this effect, because Calvert permitted Mr. Haydel to become its ostensible agent by estoppel.
"The rule of law that supports this conclusion is clearly expressed in the case of Busby vs. Walker [La.App.], 84 So.2d 304, as follows:
"`With respect to third persons, an agency may arise from acts and appearances which lead others to believe that such a relationship has been created, that is, by estoppel, and with respect to such third parties who deal with the agent, the agency may be apparent only and exist because of the estoppel of the principal or agent to deny the existence of such relationship, if the third party has relied on such appearance so that he would be prejudiced if the fact were shown to be otherwise. 2 Am.Jr. 23-26, Agency, Sec. 20 et seq.; 2 C.J.S., Agency, subd. III, Creation and Existence of Relation, § 16 et seq., p. 1041; Cason v. Cecil, (Aymond, Intervenor and Third Opponent) 194 La. 41, 193 So. 362; Hughes Lumber Co. v. Madisonville Saw & Planing Mill, 4 La.App. 662.'
"L.S.A.-C.C. Article 3000 provides:
"`Powers granted to persons, who exercise a profession, or fulfill certain functions, or doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandates exercise.'
"See also:
"McClelland et al vs. Greenwich Ins. Co., 107 La. 124, 31 So. 691;
"St. Landry Wholesale Mercantile Co. vs. Teutonia Ins. Co. of New Orleans, 113 La. 1053, 37 So. 967;
"First Nat. Bank in Mansfield et al vs. Hartford Fire Ins. Co. [La.App.], 195 So. 821;
"D. H. Holmes Co., Ltd. vs. Terry [La.App.], 58 So.2d 840;
"Griffin vs. Safety Industrial Life Insurance & Sick Benefit Association, Inc. [La.App.], 119 So.2d 118;
"Mayes vs. State Farm Mutual Automobile Insurance Company [La.App.], 141 So.2d 890."
*268 The following testimony of Mr. Guidry was elicited under cross-examination:
"Q: Now, sir, getting back to your relationship and duties with your dealer, and more specifically with Mr. Gabriel Haydel and St. Mary Motors Company, isn't it true that your agreement with him provides that he shall, upon receipt of notice of a loss, that he will contact you?
"A: Yes.
"Q: And that is standard procedure?
"A: That's right.
"Q: They require him to do this?
"A: Yes.
"Q: And does he do that?
"A: Well, sometimes he will delay a day or so, but as a rule he will either call me or he will write me and tell me to send an adjuster."
Therefore, notice to Mr. Haydel was notice to the insurance company.
However, this finding does not resolve all of the issues in this case, for the reason that Mr. Robicheaux did not furnish the required proof of loss within 91 days after the date of the accident.
Returning now to the opinion rendered by the lower court, we adopt the following language as our own:
"Under the insurance policy sued upon, and the jurisprudence of this State, the failure of the insured to file his proof of loss within a specified time does not have the effect of forfeiting his right to recover for a loss covered by the policy. The only penalty provided for in the contract sued upon is that `No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy * * *.'
"Under these provisions the company could have caused the action to be delayed until these conditions were met by filing a plea of prematurity. See Jenness vs. Fidelity Union Fire Ins. Co., 175 La. 923, 144 So. 716.
"Instead, it joined issue on the merits by denying liability, and, upon no other ground than that the plaintiff had failed to give it notice and to file a proof of loss. Clearly, these do not constitute a proper defense on the merits. They cannot defeat the action.
"It is well settled by the jurisprudence of this State that when an insurance company denies liability for a claim under an insurance policy, it abandons its rights to compel the claimant to comply with the preliminary provisions of the policy regarding the furnishing of proof of loss.
"There are at least three reasons for this rule. The first is that it is inconsistent for an insurance company to deny liability on a claim, and at the same time insist that it should be furnished with formal proof of it.
"The second is that the law does not compel one to do a vain thing as a condition precedent to the bringing of an action.
"The third is that the insurance company is presumed to have been sufficiently acquainted with the merits of the claim to support its decision in denying it, otherwise it could not have done so.
"This has been the rule in this state since the year 1872. It was first pronounced in the case of La Societe de Bienfaisance des Arts et Metiers vs. William B. Morris & Co., Agents, etc., 24 La.Ann. 347.
"It has been followed in the following cases:
"Thompson vs. State Assur. Co., Ltd. of Liverpool, England, 160 La. 683, 107 So. 489;

*269 "Jenness vs. Fidelity Union Fire Ins. Co., 175 La. 923, 144 So. [716] 717;
"Breeland et ux vs. Great States Ins. Co. [La.App.], 147 So. 714;
"First Nat. Bank in Mansfield et al vs. Hartford Fire Ins. Co. [La.App.], 195 So. 821;
"Arcadia Bonded Warehouse Co., Inc. vs. National Union Fire Ins. Co., 206 La. 681, 19 So.2d 514;
"Griffin vs. Safety Industrial Life Insurance & Sick Benefit Association, Inc. [La.App.], 119 So.2d 118.
"There can be do doubt, therefore, that Mr. Robicheaux's failure to furnish Calvert with proof of loss does not bar his right to recover. That leaves Calvert with no defense, except a general denial.
"Mr. Robicheaux has established his claim by a great preponderance of the evidence, and is entitled to recover. He is therefore entitled to judgment in the amount of $843.45.
"Mr. Robicheaux's claim for 12% damages and attorney's fees is based on the contention that Calvert's failure to pay for his loss was arbitrary, capricious and without probable cause.
"L.S.A.-R.S. 22:658 provides for these penalties when an insurance company fails to pay a claim within sixty days after receipt of proof of loss, and demand therefor, when such failure to pay is found to be arbitrary, capricious or without probable cause.
"In order for a claimant to recover these penalties he must clearly show that he is entitled to them, as the statute is penal in character and must be strictly construed.
"Therefore, in order for Mr. Robicheaux to be entitled to the penalties, he must clearly show that Calvert received a satisfactory proof of loss on his claim; that sixty days elapsed thereafter and he was not paid; that he made a demand for the penalties upon Calvert, and that Calvert's failure to settle his claim was arbitrary, capricious or without probable cause.
"Mr. Robicheaux failed to discharge this burden in several particulars. He did not furnish Calvert with a proof of loss, although blanks therefor were furnished him. He did not show that he had made a demand on Calvert for the penalties. And he failed to show that Calvert's failure to settle his claim was arbitrary, capricious or without probable cause.
"As a matter of fact, no one authorized to settle claims for Calvert was aware of the claim until one year and eight months after it arose. A diligent insurance company is justified in looking upon such a claim with skepticism. It had been deprived of the opportunity of physically examining the loss, the witnesses, and to take steps to possibly reduce the claim, or to obtain a subrogation of it.
"The most convincing evidence that Mr. Robicheaux furnished Calvert was a copy of the estimate of the repairs made on his car. He refused to furnish it with a proof of loss. Under these circumstances Calvert was justified in refusing to pay the claim until it was judicially established. That was its only opportunity to traverse it. This decision, therefore, was not arbitrary, capricious or without probable cause.
"Accordingly, Mr. Robicheaux has failed to show that he is entitled to recover the penalty interest and the attorneys' fees he is seeking.
"For these reasons, therefore, let there be judgment in favor of the plaintiff and against the defendant in the amount of $843.45, with legal interest from the *270 date of judicial demand until paid, and for costs.
"Let there be further judgment denying the plaintiff's demand for penalty interest and attorney's fees."
The judgment of the lower court is
Affirmed.
NOTES
[*] Due to the death of HERGET, J., prior to rendition, this opinion is rendered by ELLIS, LOTTINGER, LANDRY and REID, JJ.