225 So.2d 284 (1969)
SECURITY TRANSFER COMPANY, Inc., et al.
v.
INSURED LLOYDS COMPANY.
No. 3575.
Court of Appeal of Louisiana, Fourth Circuit.
July 7, 1969.
Rehearing Denied July 31, 1969.
*285 Morphy & Freeman, A. D. Freeman, Jr., New Orleans, for plaintiffs-appellants.
Christovich & Kearney, A. R. Christovich, Sr., New Orleans, for defendant-appellee.
Before SAMUEL, HALL and LESUEUR, JJ.
HALL, Judge.
Security Transfer Company, Inc., d/b/a Security Van Lines Inc. and Joseph Dunkley, as named insured, instituted this action against Insured Lloyds Insurance Company, their automobile collision insurer, endeavoring to recover the sum of $3,525.00 together with statutory penalties and attorney's fees. Plaintiffs' claim arises out of a collision between their insured tractor and another vehicle on January 23, 1964 in the City of Beaumont, Texas.
Insured Lloyds defended on the ground that no notice of the collision was given to it in accordance with the policy provisions and that it has been prejudiced thereby in that it was given no opportunity to evaluate the condition of the damage to the assured's vehicle and was given no opportunity to investigate the collision and to protect its interests against a negligent tortfeasor, if one existed.
The Trial Judge held that plaintiffs did not give timely notice of the collision to the insurer in violation of the policy provisions and rendered judgment dismissing plaintiffs' suit. Plaintiffs appealed.
The defendant, Insured Lloyds, is a surplus line insurer domiciled in the State of Texas. It has no employees in this State and no office or other representatives here. It has a "treaty" with Tri-State Universal Agency, Inc., an insurance broker located in Bossier City, Louisiana, which is authorized to sign policies for it.
All of plaintiffs' insurance business was handled by Leaman & Reynolds Inc., an insurance agency situated in New Orleans, and this agency procured for them the surplus line policy involved in this litigation from Tri-State Universal Agency, Inc. Tri-State signed and delivered the policy on behalf of Insured Lloyds.
The policy provides inter alia
"* * * when loss occurs the insured shall:

* * * * * *
"(b) give notice thereof as soon as practicable to the company or any of its authorized agents * * *.
"(c) file proof of loss with the company within sixty days after the occurrence of loss, unless such time is extended in writing by the company * * *.

*286 "Upon the company's request the insured shall exhibit the damaged property to the company * * *."
The policy contains a condition calling for an appraisal if the insured and insurer fail to agree on the amount of the loss, contains a subrogation clause, and also contains the following provision:
"Payment for loss may not be required nor shall any action lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy."
The evidence shows that on January 23, 1964 the insured tractor was run into by another vehicle in Beaumont under circumstances which indicated absolute liability on the part of the operator of the other vehicle who was insured against liability by Trinity Universal Insurance Company.
Mr. Quarles, Director of Safety and Maintenance for Security Van Lines, was immediately notified of the accident by Joseph Dunkley, driver of the truck, who telephoned him from Beaumont. After getting what details he could from Dunkley, Mr. Quarles telephoned the Beaumont office of Crawford and Company, a nationwide independent adjusting agency, and employed them to investigate the accident and report to him. He also, within a matter of 24 hours, reported the accident to Mr. Leaman of Leaman & Reynolds Inc. Mr. Leaman later got in touch with Crawford and Company to find out from them if there was any damage to the cargo of the van and to find out the extent of the damage to the tractor or the trailer. He gave them the number of the policy issued by Insured Lloyds. Mr. Leaman first stated that he gave the policy information to Crawford and Company at their request, but later stated that he called them to give them the policy details and other information that they require in adjusting a loss.
Thereafter Mr. Leaman busied himself for some months in an attempt to settle the claim with Trinity Universal Insurance Company, the tort feasor's insurer. The chances of a settlement looked good until Trinity Universal found out someone was making a claim for personal injuries and thereupon refused to settle.
Meanwhile Security Van Lines had had the tractor completely repaired and painted in its own shop in Kenner, Louisiana, rendering it impossible for the damage resulting from the accident to be viewed.
After Trinity Universal refused to settle Mr. Leaman telephoned Mr. Turner of Tri-State Universal Agency Inc. and notified him of the accident. This was some 6 or 7 months after its occurrence, and Mr. Turner immediately denied liability because of the violations of the policy provisions.
It is undisputed that neither Tri-State nor Insured Lloyds had had any notice of the accident direct or indirect until Mr. Leaman's telephone call to Mr. Turner 6 or 7 months after the accident, and that no proof of loss was furnished until over a year thereafter.
Mr. Leaman testified that he expected Crawford and Company to give notice of the loss to Tri-State or Insured Lloyds. However Crawford and Company had been hired by Security Van Lines to investigate the accident for its account, being obligated by Federal Law to have an investigation made. Crawford and Company investigated the accident, made a report of its investigation to Security Van Lines, and to no one else, and was paid by Security Van Lines. Crawford and Company had no relationship whatever with Tri-State or Insured Lloyds as far as this accident was concerned. They had no obligation to report to either of them and did not do so. In our opinion notice of the loss to Crawford and Company did not constitute notice either to Insured Lloyds or to Tri-State.
*287 The question presented is whether notice of the loss given by Mr. Quarles to Leaman & Reynolds Inc. constituted notice to Insured Lloyds or its agent Tri-State.
Mr. Leaman testified that both he and Leaman & Reynolds Inc. were licensed insurance agents; that the policy involved herein was issued by Tri-State and sent to him and he delivered it to Security Van Lines; that the premium was invoiced to him, and he in turn invoiced Security Van Lines; Security Van Lines paid him and he paid Tri-State. He further testified that his company was required to pay the premium to Tri-State whether or not he received payment from the insured. He "believed" he had some sort of a contract with Tri-State but that it was not an agency contract; that Insured Lloyds had no agents in Louisiana other than Tri-State. He further testified that he could place Security Van Lines' insurance with anyone he wished; that he did not place all their business with Insured Lloyds.
Mr. Turner, vice-president of Tri-State Universal Agency Inc., testified that the first notice of the accident he had from anybody of any kind or character, either verbal or written, was when Mr. Leaman telephoned him some 6 or 7 months after it happened; that the tractor was then completely repaired and he had no opportunity to see how much it had been damaged or what repairs were needed; that the first official notice he received was in April of 1965 and at this time he was furnished for the first time a copy of Crawford and Company's report to Security Van Lines. He further testified that Leaman & Reynolds Inc. never had an agency contract either with Insured Lloyds or with Tri-State; that Tri-State could not give an agency contract to a broker to bind Insured Lloyds; that Leaman & Reynolds Inc. could not bind a risk; that they were brokers and the agents of Security Van Lines and not agents of Tri-State or Insured Lloyds.
Mr. Leaman, recalled to the stand, testified that sometimes he paid part or all of the commission to Tri-State at the time he placed the policy, but that, although he had no agency contract, he had a contract with them providing that he could pay once a month.
Insured Lloyds is a surplus line insurer. A surplus line insurer is an "unauthorized insurer" which is permitted to accept coverages not obtainable from insurance companies authorized to do business in this State. See LSA-R.S. 22:1257. Leaman & Reynolds Inc. handled all of the insurance business of Security Van Lines and was free to place the insurance wherever it desired. Insurance of the type in question here was placed for Security Van Lines by Leaman & Reynolds Inc. at its discretion with a number of different surplus line insurers, including Insured Lloyds.
We agree with the holding of the Trial Judge that under the proof adduced in this case Leaman & Reynolds Inc. was nothing more than a broker in placing insurance of this type and as such was acting as the agent of Security Van Lines and not as the agent of Insured Lloyds. Notice to it did not constitute notice to Insured Lloyds or to Tri-State. See LSA-R.S. 22:1162; Morris McGraw Wooden Ware Co. v. German Fire Ins. Co. of Pittsburg, Pa., 126 La. 32, 52 So. 183, 38 L.R.A.,N.S., 614; Whiteman v. Rhode Island Ins. Co., D.C., 78 F.Supp. 624. See also Hauser v. American Central Insurance Co., St. Louis, Mo., D.C., 216 F.Supp. 318; Wisconsin Barge Line Inc. v. Coastal Marine Transport Company, Inc., D.C., 285 F.Supp. 264.
Plaintiffs argue that notice of loss given by the insured to the insurance agent who delivered the policy and to whom the insured paid the premium was notice to the insurer, citing Mathews v. Marquette Casualty Company, La.App., 152 So.2d 577; Robicheaux v. Calvert Fire Insurance Company, La.App., 171 So.2d 264; Temple v. Harper, La.App., 200 So.2d 749, and Hinson v. Zurich Insurance Company, La. App., 196 So.2d 827.
*288 The Mathews case is distinguishable on the ground that in that case Frazier solicited the business from Miss McIntyre for account of the Gibson Agency which was the authorized agent of Marquette Casualty Company. The Court held that Frazier was acting with the authority of the Gibson Agency in his dealings with Miss McIntyre and that notice to him was notice to the Gibson Agency and therefore notice to Marquette Casualty Company, its principal.
The Robicheaux case is distinguishable in that when plaintiff purchased the automobile from the motor company the financing and collision insurance were arranged for and handled by Mr. Haydel, president of the motor company. The financing was done by Commercial Credit Corporation and the insurance policy was written by Calvert Fire Insurance Company. Both Commercial Credit Corporation and Calvert Fire Insurance Company were subsidiaries of Commercial Credit Company. Mr. Haydel received a commission from Commercial Credit Corporation for the finance business and an additional commission for the insurance business. This was a regular routine package deal handled entirely by Mr. Haydel and the Court held that Calvert Fire Insurance Company permitted Mr. Haydel to become its ostensible agent by estoppel and that notice to him was notice to Calvert.
The Temple case is similar to the Robicheaux case and follows it.
In the Hinson case the Court found a course of conduct between the insurer and Leo Thibodeaux d/b/a Lion Insurance Agency which caused it to apply the principle of estoppel. In that case the insurer's general agent had actively solicited Thibodeaux to write business through it.
We find no evidence of estoppel in the case before us.
As said by the Trial Judge in his written "Reasons for Judgment":
"The policy provisions relative to reasonable notice of claim and the right of reasonable inspection of alleged damages are material conditions of this policy and failure to give same have been judicially determined to preclude recovery. See Hartford Steam Boiler Inspection & Ins. Co. v. Parker Gravel [La.App.], 153 So. 547, and Menard v. Citizens Insurance Company of New Jersey [La.App.], 184 So.2d 85."
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by plaintiffs-appellants.
Affirmed.