WATKINS, Judge.
This is a suit brought by Leroy Miller to recover for the destruction by fire of a certain tenant dwelling owned by plaintiff, which loss plaintiff contends was covered by a fire insurance policy issued by Underwriters at Lloyd’s, London, England. Defendant contends there was no coverage because the policy described the property as “owner occupied” and because the property had been “vacant or unoccupied” for more than 60 days in violation of the “permission granted clause” in the policy. The trial court found there was coverage under the policy, and rendered judgment accordingly, awarding plaintiff the sum of $5,000.00. We reverse, and dismiss plaintiff’s suit.
The property that was destroyed by fire on November 13, 1978, was located- at 1505 Dan Street, Bogalusa, Louisiana. Plaintiff and his wife lived in the Pooles Bluff Community, some four miles away. Plaintiff’s agent, James Stevenson, president of GAR Real Estate & Insurance Agency, Inc., Bo-galusa, Louisiana had secured fire coverage on the tenant dwelling since 1969. He was fully aware of the fact it was not occupied *656 by Miller. The last policy issued was a surplus line insurance policy with the insurer being defendant, Underwriters at Lloyd’s. This policy which commenced February 1, 1978, was obtained by GAR through Dupuy Busching General Agency, Inc., Jackson, Mississippi, an insurance broker. The policy was delivered to First Financial Services, Bogalusa, mortgagee of the tenant property, and a certificate of insurance was delivered to Miller. Both the policy and certificate indicated the property was “owner occupied”. In addition, a “permission granted clause” was contained in an endorsement attached to the policy, which clause read as follows:
“PERMISSION GRANTED CLAUSE (OCCUPANCY CLAUSE): In the event the property insured under this policy becomes vacant or unoccupied or if there is a change of occupancy from that indicated in the policy for more than 60 days, then the insured must notify the Company in writing and the insured’s failure to so notify the Company in writing will render the coverage on that item null and void and the insured shall be entitled to a pro rata return premium as of that date, except, if this policy shall cover more than four dwellings of four families or less, the vacancy or unoccupancy period is extended to 90 days. Vacancy or unoccu-pancy of part of the units of a multiple family dwelling shall not be deemed as vacancy or unoccupancy.”
The last tenant to reside on the premises was Gus Tynes, who moved out about June 27, 1978. All utilities were cut off, and all furnishings removed. Miller went to the V.A. Hospital intermittently for about a month after Tynes vacated the premises. He then commenced a rather protracted period of repairs to the premises, the repairs still having been in progress, although proceeding extremely slowly, at the time of the fire. Miller testified that he slept on the premises in a sleeping bag on several occasions.
We find that the premises were not owner occupied in compliance with the terms of the policy. Clearly the premises were occupied by a tenant, not by the owner at the time when the policy was issued and the certificate of insurance was delivered to Miller. Miller appears not to have called GAR’s, Dupuy Busching’s, or Underwriters’ attention to the incorrectness of the description “owner occupied”. We would find lack of owner occupancy alone sufficient reason to hold there was no coverage, but in addition, we see, Miller failed to notify Underwriters of the fact that the property had been “vacant or unoccupied” for more than 60 days, thereby violating the permission granted clause of the policy.
Appellee cites Burrell v. Seguros America Banamex, S.A., 316 So.2d 177 (La. App. 4th Cir.1975), writ refused 320 So.2d 561 (1975), to support his claim. In that case it was held that an apartment was not “vacant or unoccupied”, as the daughter of the insured owner visited the apartment to clean it and to exchange clothes once a week. Appellee argues that similarly in the present case Miller visited the tenant house to make repairs. However, both the policy in the present case and that in Burrell in the “vacant or unoccupied” clause used the disjunctive “or”. In the present case, the premises were clearly “vacant”, as the tenant, Tynes, had moved everything out. In Burrell, clothes and furniture were still in the apartment. Furthermore, even if the disjunctive had not been used, the premises in the present case were much more clearly “unoccupied”, as there is no showing that Miller visited the house regularly to make repairs, and, more important, the making over a long period of time of rather extensive repairs, which were of such a nature that they could not have been easily made had there been a tenant occupying the house, is much less consistent with an analysis of occupancy than the visiting of an apartment to clean it and exchange clothes.
Furthermore, we see, in Boyette v. Underwriters at Lloyd’s, London, 372 So.2d 592 (La.App.3d Cir.1979), a more recent case than Burrell, although the product of a different circuit, the reasoning in Burrell was questioned. In Boyette, some items of furniture and some clothes were moved *657 onto the insured premises by the owner s son and daughter-in-law after the premises had been unoccupied for from two to three months. The house was consumed by fire before further steps were taken to move in. It was held that the premises were “unoccupied”. In the present case, there were no furnishings on the premises, and thus the facts more strongly indicate lack of occupancy than those that the Third Circuit was confronted with in Boyette.
We note that in the present case the insurance agent, GAR, was largely responsible for the mistake found in the policy and certificate in their indicating that the premises were “owner occupied”, as that description was apparently taken from the application prepared by GAR. Furthermore, only the certificate (which did not contain the permission granted clause), was delivered to Miller, the failure to deliver at least a copy of the policy to Miller (the original was delivered to the mortgagee) being the result of apparent negligence on the part of GAR. We are thus faced with the question of whether or not GAR’s negligence was imputable to Underwriters.
A similar problem arose in Security Transfer Co. v. Insured Lloyds Company, 225 So.2d 284 (La.App. 4th Cir.1969). Security held a surplus line automobile collision policy under which Insured Lloyds was the insurer. An insurance agency in New Orleans, Leaman & Reynolds, had obtained the policy through a broker in Bossier city, which signed and delivered the policy on behalf of Insured Lloyds. The policy required that proof of loss be filed with Insured Lloyds within 60 days after the occurrence of loss. Security’s insured tractor was damaged in a collision, and Security reported the collision to Leaman & Reynolds and also the adjuster. Insured Lloyds was never notified by Security, the agent, or the adjuster, within the required 60 days, and proper investigation of the collision was thereby prevented. Insured Lloyds contended that it had had no notice, and refused payment of the loss. It was held that notice to the agent, Leaman & Reynolds, which had obtained the policy of insurance as surplus line insurance, was not notice to Insured Lloyds or the broker, as Leaman & Reynolds was an agent of Security, not an agent of Insured Lloyds. Similarly, in the present case we hold that GAR was acting as Miller’s agent not Underwriters’ agent in obtaining the surplus line insurance through the broker, Dupuy Busching, and that Underwriters is in no way responsible for GAR’s negligence. We might arrive at a contrary conclusion had a policy of insurance obtained through a surplus line broker as intermediary not been involved, or had the local agent GAR used a form supplied to it by Underwriters in applying for the policy of fire insurance. Cf. Tiner v. Aetna Life Ins. Co., 291 So.2d 774 (La.1974). However, unlike the facts presented in finer, there is nothing in the present case that would indicate that any form of agency, either under the statutory laws regulating insurance or under the Codal laws regulating mandate, existed between GAR and the insurer, Underwriters. Thus, GAR’s negligence was in no way imputable to Underwriters.
The trial court found that there had been proper occupancy within policy provisions and that in any event the mistake of the agent GAR was imputable to Underwriters. We cannot agree. Under the facts of this case, as to which there is no dispute, we find for the foregoing reasons that the legal conclusions reached by the trial judge were incorrect.
We, therefore, reverse the judgment of the trial court, and dismiss plaintiff-appel-lee’s suit, at his cost.
REVERSED.